[No. 1192.]

# THE STATE OF NEVADA, RESPONDENT, *v.* LIZZIE LINDSEY, APPELLANT.

MURDER BY POISON — JURY MUST FIX THE DEGREE. — Where a defendant is convicted of the crime of murder, alleged to have been committed by the administering of poison, the jury may find the defendant guilty of murder in the second degree, for the reason that the statute leaves the question of degree to be settled by the jury.

IDEM — ERROR IN FAVOR OF APPELLANT. — If the jury fix the crime at murder in the second degree, in a case where the law and the facts make it murder in the first degree, it is an error in favor of the prisoner, of which the law will not take any cognizance, and of which the prisoner ought not to complain.

INSTRUCTIONS — NEGLIGENCE OF DEFENDANT — POISON TAKEN BY MISTAKE — DEFENDANT LIABLE FOR THE CONSEQUENCES. — Instructions to the effect that in the event of the defendant's preparing poison with suicidal intent, and the deceased person having drank the same by mistake, that the defendant would be "liable for the consequences," in the same connection stating correctly what the consequences would be, are not erroneous or misleading.

IDEM — INSTRUCTIONS MUST BE CONSIDERED AS AN ENTIRETY. — *Held*, that the instructions must be considered together as an entirety, and that when so considered they state a correct principle of law.

APPEAL from the District Court of the Second Judicial District, Ormsby County.

The instructions referred to in the opinion read as follows: "The jury are instructed that if a person exposes or places poison in such a position that it is likely to be unconsciously or non-negligently taken by another person, either as food or drink, he or she is liable for the consequences. And you are further instructed that if a person, in attempting to commit suicide, unlawfully kills another, such person is guilty of manslaughter. If you believe from the evidence in this case, beyond all reasonable doubt, that the defendant, Lizzie Lindsey, on the 2d day of December, A. D. 1883, purchased a poisonous substance, to wit, strychnine, with intent to take her own life; that she took it to the house where she and deceased were residing; that she put the strychnine so purchased by her into a glass of whisky; that she left said glass containing said strychnine and whisky upon a table in deceased's room which deceased occupied, and had the right to occupy, and in such

exposed situation that it was likely to attract, and did attract, deceased's attention; and if you further believe from the evidence beyond all reasonable doubt that the deceased, Robert Pitcher, rightfully went into the room in which the glass containing the whisky and strychnine was, and that the said Pitcher, without any fault on his part, took, drank, and swallowed down the contents of said glass, not knowing at the time he so drank it that it contained any poison, and that the drinking of the strychnine contained in said glass caused said Pitcher's death, and that he died * * * from the effects of drinking said poison,—then I instruct you that the defendant is guilty of manslaughter, and you should so find."

*R. M. Clarke*, for Appellant:

I. The indictment charges murder by means of poison, and no conviction can be had for murder committed by any other instrumentality other than that specified in the indictment.   (1 Comp. L. 1860; 2 Whar. Cr. L., sec. 1059, and note; Rus. on Cr. 467; Roscoe's Cr. Ev. 567; 1 East P. C. 341.)

II. Murder committed by poison is murder of the first degree, and can be nothing else.   (1 Comp. L. 2323; *People* v. *Sanchez*, 24 Cal. 28; *People* v. *Nichol*, 31 Cal. 211; *People* v. *Bealoba*, 17 Cal. 389; *Riley* v. *State*, 9 Humph. 646; *State* v. *Pike*, 49 N. H. 399;[1] *State* v. *Harris*, 12 Nev. 415; *State* v. *Hymers*, 15 Nev. 50; 2 Bish. Cr. L., sec. 727, note 2; *People* v. *Campbell*, 40 Cal. 129;[2] *People* v. *Long*, 39 Cal. 694; *People* v. *Vasquez*, 49 Cal. 560; *People* v. *Haun*, 44 Cal. 96.)

III. A verdict of murder of the second degree is an acquittal of murder of the first degree. (*People* v. *Gilmore*, 4 Cal. 376;[3] *State* v. *Ross*, 29 Mo. 32.)

IV. It was error to charge that defendant "was liable for the consequence of her act," if she "negligently and knowingly exposed a deadly poison in such a place or manner as it would be likely to be taken by another unconsciously."

*W. H. Davenport*, Attorney General, and *J. D. Torreyson*, District Attorney of Ormsby County, for Respondent:

I. The degree of homicide is a fact which the statute requires to be specially found by the jury.

If the crime charged in the indictment be murder in the first

1  6 Am. Rep. 533.    2  43 Am. Rep. 257.    3  60 Am. Dec. 620.

degree, a verdict that the jury find the defendant guilty of the crime as charged in the indictment is not such a designation of the degree as the statute requires. (1 Whar. Cr. Law, sec. 543, and note 6; Whar. on Hom., sec. 900, and note 3; *State v. Rover,* 10 Nev. 388, 392;[1] *People v. Campbell,* 40 Cal. 129, 138, 139;[2] *Johnson v. State,* 17 Ala. 618; *Levison v. State,* 54 Ala. 520; *Beaudien v. State,* 8 Oh. St. 634; *Dick v. State,* 3 Oh. St. 89; *Parks v. State,* Id. 101.)

II. The jury must ascertain the degree, and they have the power to fix a lower degree than the statute provides. (1 Comp. Laws, 2323; 1 Whar. Crim. Law, sec. 391; *State v. Dowd,* 19 Conn. 387; *Lane v. Com.,* 59 Pa. St. 371; *Rhodes v. Com.,* 48 Pa. St. 396; *Shaffner v. Com.,* 72 Pa. St. 60;[3] *Com. v. Keeper Prison,* 2 Ashm. 231; *Robbins v. State,* 8 Oh. St. 131, 193, 194; *Beaudien v. State,* 8 Oh. St. 635, 637–638.)

III. A party who places poison in such a position that it is likely to be unconsciously and non-negligently taken by passers-by is liable for the consequences. (1 Whar. Cr. Law, secs. 166, and note 3; 345, and note 1; 385, and note 2; Desty Am. Cr. Law, sec. 129; J. & N. 3; *Reg. v. Michael,* 9 Car. & P. 356; *Reg. v. Chamberlain,* 10 Cox C. C. 486.)

IV. Whoever, in attempting to commit suicide, unintentionally kills another is guilty of manslaughter. (1 Whar. Cr. Law, secs. 328, 453, and notes; *Com. v. Mink,* 123 Mass. 422.[4])

By the Court, HAWLEY, J.: —

Appellant was indicted for the crime of murder, alleged to have been committed by the administering of poison. The jury found her guilty of murder in the second degree.

I. It is argued in her behalf that the verdict is a verdict of acquittal; that the crime alleged in the indictment was murder in the first degree; that there is no such crime under our statute as murder in the second degree for a homicide committed by means of poison. The statute of this state declares that "all murder which shall be perpetrated by means of poison, lying in wait, torture, or by any other kind of willful, deliberate, and premeditated killing, or which shall be committed in the perpetration, or attempt to perpetrate, any arson, rape, robbery, or burglary, shall be deemed murder of the first

1  21 Am. Rep. 745.    2  43 Am. Rep. 257.    3  13 Am. Rep. 649.    4  25 Am. Rep. 109.

degree; and all other kinds of murder shall be deemed murder of the second degree; and the jury before whom any person indicted for murder shall be tried, shall, if they find such person guilty thereof, designate by their verdict whether it be murder of the first or second degree; but if such person shall be convicted on confession in open court, the court shall proceed, by examination of witnesses, to determine the degree of the crime, and give sentence accordingly." (1 Comp. Laws, 2323.)

Under this statute, there are certain kinds of murder which carry with them conclusive evidence of premeditation, viz., when the killing is perpetrated by means of poison, lying in wait, or torture; or when the homicide is committed in the perpetration, or attempt to perpetrate, any of the felonies enumerated in this statute. In these cases, the question whether the killing was willful, deliberate, and premeditated is answered by the statute in the affirmative, and if the prisoner is guilty of the offense charged, it is murder in the first degree. (*State v. Hymer*, 15 Nev. 50, and authorities cited in appellant's brief.) But suppose the jury, in charity for the faults and weakness of the human race, sympathy for the prisoner, or any other mistaken view of the law or the facts, lessens the offense to murder in the second degree, is the prisoner to go free? Does not the case stand precisely upon the same plane as a verdict of murder in the second degree in any case not enumerated in the statute, where there is a willful, deliberate, and premeditated killing? Is it not as much the duty of the jury in such a case to find the prisoner guilty of murder in the first degree as in the cases specially enumerated in the statute? Suppose the jury in such a case, where the evidence is positive, clear, plain, and satisfactory beyond a reasonable doubt, regardless of all the testimony, and in violation of the well-settled principles of law, should find the prisoner guilty of murder in the second degree, would the prisoner be entitled to a new trial upon the ground that the verdict is against the evidence? Is it not a fact that juries frequently render just such verdicts, and the result cannot be accounted for upon any theory other than that of a compromise of opinion? Why should such verdicts be allowed to stand? The answer is plain. The reason is, that the statute leaves the question of degree to be settled by the verdict of the jury. A verdict finding the prisoner guilty of

murder, without mentioning the degree, would be a nullity. In *State* v. *Rover*,[1] this court, referring to the statute which we have quoted, said: "By this statute, murder is divided into first and second degrees, depending upon the particular circumstances in which the crime is committed; and whether it be of the first or second degree is a fact to be specially found from the evidence adduced, without reference to any special facts which may be stated in the indictment. In case of a trial, the jury before whom the trial is had, if they find the defendant guilty, are required to find this fact, and to designate by their verdict whether their guilt be of the first or second degree; and in case of a plea of confession, the court is required to determine this question of fact by the examination of witnesses in open court. It is therefore apparent, from the plain and positive provisions of the statute, that a verdict which fails to designate the degree of murder of which the jury find the defendant guilty, is so fatally defective that no judgment or sentence can be legally pronounced thereon." (10 Nev. 391.)

A judge should always inform the jury of the degree which the law attaches to murder, by whatever means the crime may have been committed; but in every case it is the province of the jury, if the prisoner is found guilty, to determine and fix the degree by their verdict, and the courts cannot deprive the jury of their right to fix the degree by imperatively instructing them, in a case where the crime was committed by administering poison (or in any other case) that if they find the prisoner guilty they must find him guilty of murder in the first degree. (*Robbins* v. *State*, 8 Ohio St. 193; *Beaudien* v. *State*, Id. 638; *Rhodes* v. *Com.*, 48 Pa. St. 398; *Lane* v. *Com.*, 59 Pa. St. 375; *Shaffner* v. *Com.*, 72 Pa. St. 61.[2])

Wharton, in discussing the degrees of murder, says: "But, however clear may be the distinction between the two degrees, juries not unfrequently make use of murder in the second degree as a compromise, when they think murder has been committed, but are unwilling, in consequence of circumstances of mitigation, to expose the defendant to its full penalties." (2 Whart. Crim. Law, sec. 1112.)

In *Rhodes* v. *Com.*, *supra*, the court said: "Under proper instructions from the bench, it is not only the right of the jury to ascertain the degree, but it is the right of the accused to have it ascertained by them. * * * No doubt cases of

---

1 21 Am. Rep. 745.        2 13 Am. Rep. 649.

murder in the first degree have been found·in the second, but
this must have been anticipated when the statute was framed,
and.has certainly been observed under its operation, and yet.it
has remained upon our statute-book since 1794 unaltered in this
regard.   Possibly the very distinction of degrees was invented
to relieve such jurymen's consciences as should·be found more
tender on the subject of capital punishment than on their
proper duties under evidence.   Many men have probably.been
convicted of murder in the second degree, who, really guilty
of the higher crime, would .have escaped punishment altogether
but for this distinction in degrees so carefully committed by
the statute to juries."

The jury have the undoubted power to fix the crime in the
second degree when it ought, under the law and the facts, to
be fixed in the first.   "We need not speculate why it was so pro-
vided.  It is sufficient that it is so written, and we cannot change,
alter, or depart from it."   (*Lane* v. *Com.*, *supra.*)

Our attention has not been called to any case where a verdict
of murder in the second degree has been set aside upon the
ground that the testimony was such as to make the crime
murder in the first degree.   But, on the other hand, the direct
question involved in this case has been decided adversely to
appellant.  (*State* v. *Dowd*, 19 Conn. 387; *Lane* v. *Com.*, *supra.*)
In the latter case the court said:  "It has never yet been
decided in Pennsylvania that a verdict of murder in the second
degree might not be given in a case of murder by poison.
That it may be given is as unquestionable as the power of the
jury is under the act to give it, and impossible for the court to
refuse it."

If the jury fix the crime at murder in the second degree, in a
case where the law and the facts make it murder in the first
degree, it is an error in favor of the prisoner, of which the law
will not take any cognizance, and of which the prisoner ought
not to complain.

II.  Objection is made to certain instructions given by the
court, upon the theory that the poison may have been mixed
with whisky with the intent on the part of the appellant to
commit suicide, and was negligently exposed in such a place
and manner as would likely "to be unconsciously or non-
negligently taken by other persons, either as food or drink,"
and the jury were told that in such a case the person so leav-

ing the poison would be "liable for the consequences," and would be "guilty of manslaughter." This objection cannot be sustained. The use of the words "liable for the consequences," of which complaint is made, might have been error if the court had not in the same connection stated what the consequences would be; but the instructions upon this point must be considered together as an entirety, and when so considered they state a correct principle of law (Desty Cr. Law, § 124 *b;* 2 Whart. Crim. Law, § 1004; *Reg.* v. *Michael,* 9 Car. & P. 356); and it is evident that the jury could not have been misled.

The judgment of the district court is affirmed.