## STATE OF MAINE *vs.* ELECTUS OAKES.

### Aroostook.    Opinion July 24, 1901.

*Indictment for Murder.    Verdict.    Degree of Crime.    R. S., c. 118, § 4.*

A person on trial for murder must be considered as standing upon all his legal rights, and waiving nothing.

In the trial of a person upon an indictment charging him with murder, an instruction to the jury by the presiding justice, that their verdict should be not guilty, or guilty of murder in the first degree, is repugnant to § 4, of chapter 118, R. S. which provides that: "The jury, finding a person guilty of murder, shall find whether he is guilty of murder, in the first or second degree," and is, therefore, erroneous.

On motion and exceptions by defendant. Exceptions sustained.

Indictment for murder on which the defendant was convicted.

*Wm. T. Haines*, Attorney General, for state.

*Don A. H. Powers*, for defendant.

SITTING: WISWELL, C. J., WHITEHOUSE, STROUT, FOGLER, PEABODY, JJ.

FOGLER, J. The respondent, Electus Oakes, was indicted and tried for the murder of his son, Oliver Oakes.

The jury returned a verdict of guilty of murder in the first degree.

The case comes to this court upon appeal, and also upon exceptions to instructions given to the jury by the presiding justice.

The respondent, a man eighty years of age, admitted that he shot and killed his son, but contended that the killing was done in defense of his own life and that of his wife. He testified that on the morning when the shooting occurred, before he had risen from his bed, he heard loud words between his son and his wife who had risen before him; that he heard his son threaten to take the life of his, the defendant's wife; that he heard the sound of rocks thrown against his house; that he heard the discharge of a gun and heard his wife scream; that, having arisen and partly dressed himself, he went to the door of his house and saw his son on the opposite side of the road, in front of his son's house, loading a gun which he then held, at the same time threatening to have their hearts' blood; and thereupon he got his own gun and shot and killed his son, as he says, to protect his own life and that of his wife. The respondent's wife in her testimony substantially corroborated the testimony of her husband.

Witnesses for the State gave a different version of the affair, so far as the language and conduct of the son are concerned, testifying that the son made no such threats as are attributed to him by the respondent and his wife, and that he had no gun at the time.

The presiding justice, in the course of his charge, gave to the jury correct definitions of the crimes of murder and manslaughter, and correctly instructed them as to the distinction between murder in the first degree, and murder in the second degree, and instructed them properly in regard to the law of self-defense.

The instructions of the presiding justice to which the respondent excepts are as follows:

"It is the unlawful killing of a human being which is declared to be murder, and the unlawful killing, as I have already indicated to you from the statute, may be murder in one degree or the other, or it may be manslaughter; manslaughter being the unlawful killing where there is no malice either expressed or implied, and where

the act is done upon sudden provocation before a man has time to cool or deliberate, or form an intelligent intention. In this case the state, by its learned Attorney General, has taken the position, as I understand him, that this was a deliberate, wilful, and express act of the defendant, that he meant to do what he did do, and that there was no excuse in law for what he did do.·

"If it was the deliberate, sedate intent of the prisoner to kill the deceased, and there was no justification for it, no legal excuse for it, then, gentlemen, that would be evidence from which you would be authorized to find express malice aforethought, and the defendant should be found in such a. case as that guilty of murder in the first degree.

"I do not remember any evidence in the case, gentlemen, which calls upon me to instruct you in regard to implied malice, because that is not the position, as I understand it, presented by the state, or presented by the evidence; and it is claimed by the learned counsel for the respondent that there is no evidence in this case which will warrant you in finding a verdict of manslaughter.

"There is no evidence that it was done in such heat of passion or upon such sudden provocation, and with such absence of malice as to reduce the crime to the degree of manslaughter.

"Gentlemen, so far as I remember the case, there is no evidence which I think calls upon me to submit the question of manslaughter to you. The defendant says there is a perfect and absolute defense. I do not understand him to claim it was an unlawful killing done in heat or excitement under such provocation as would show absence of malice to reduce it to manslaughter. As I understand it, gentlemen, the question practically is whether the respondent is guilty of murder or whether he is not guilty at all."

In closing his charge the court says:

"Now, in this solemn case you take these witnesses, search them, weigh them, remove from their testimony that which you do not believe on both sides; and then, taking all the evidence in the case, on both sides, everything, then say whether you find beyond a reasonable doubt that the respondent at the bar is guilty or not guilty of murder in the first degree.

"If you find him guilty of murder in the first degree, you will say so. If you find not guilty, you will say so with equal readiness and independence."

We think the instructions to which exceptions are taken are erroneous so far as they relate to the degree of criminality. It was the province of the jury to determine the guilt or innocence of the respondent, and if they found him guilty of murder, to determine the nature of the crime of which he was found guilty, whether manslaughter or murder, and, if murder, whether in the first or second degree.

Revised Statutes chapter 118, § 4, is as follows:—

" The jury, finding a person guilty of murder, shall find whether he is guilty of murder in the first or second degree. When a person is found guilty of murder by confession in open court, the court, from testimony, shall determine the degree of murder, and sentence accordingly."

In the opinion given to the executive council in the case of *State* v. *Cleveland*, Mr. Justice DANFORTH and Mr. Justice WALTON, referring to the foregoing section of the statute say, (58 Maine, 564):

" By that section it is provided that the jury, if the case goes to them, or upon confession of the accused the court, upon testimony, are to determine the degree of the murder. This provision is peremptory and unqualified in its terms, leaving nothing to inference, but comprehending all cases, whatever may be the form of the indictment. The provision is thus express, that it may be certain that the jury have not only had their attention called to the matter, but that they have considered and decided this important question of fact. And why should there be any hesitation in giving full force, to a provision of law so explicit? It is not a matter of mere form, but a question of fact vital to the issue and one to be settled by the testimony."

Though this may not be regarded as authority, yet, coming from two so eminent jurists, and being so in accord with our own views, we feel constrained to adopt the language as a true exposition of the important and peremptory terms of the statute.

The instruction that the jury should determine whether the

respondent was not guilty or guilty of murder in the first degree, took from the jury the important question of fact as to the degree of criminality and was clearly repugnant to the imperative terms of the statute above recited.

In *Rhodes* v. *Com.* 48 Pa. 396, the respondent was indicted and tried upon the charge of murder. The statute provided there, as here, that the jury, if they found the person accused guilty of murder, should "ascertain in their verdict whether it be murder in the first or second degree." The presiding justice instructed the jury as follows: "If you find the defendant guilty, your verdict must state guilty of murder in the first degree in manner and form as he stands indicted." This was held to be error. The court says, p. 398, "the statute created a distinction, unknown to the common law, between murder in the first and second degrees, and by very precise words, made it the exclusive right and duty of the jury to ascertain the degree when the conviction resulted from a trial." . . . . "It is vain to argue that the judge was more competent to fix the degree than the jury, or that the circumstance proved the crime to be murder in the first degree, if murder at all; for the statute is imperative that commits the degree to the jury."

To the same effect are *Lane* v. *Com.*, 59 Pa. St. 371; *State* v. *Dowd*, 19 Conn. 388; *Hopt* v. *People of Utah*, 110 U. S. 574.

See also *State* v. *Meyer*, 58 Vt. 457; *Baker* v. *People*, 40 Mich. 411; *Panton* v. *The People*, 114 Ill. 505.

In the case at bar it appears from the charge that the counsel for the respondent, in his argument, contended that his client was guilty of no offense and did not contend in the progress of the case, or in the argument, that if the respondent should be found guilty, it should be of a less degree than murder in the first degree. Conceding this, we do not think it can be regarded as a waiver by the respondent of any rights guaranteed to him by law.

A person on trial for murder must be considered as standing upon all his legal rights, and waiving nothing. *Hopt* v. *Utah*, supra; *Cancemi* v. *The People*, 18 N. Y. 128; *Perteet* v. *The People*, 70 Ill. 171; *Dempsey* v. *The People*, 47 Ill. 323, 325.

Our conclusion is that the exceptions must be sustained. This

conclusion renders it unnecessary for us to examine the questions raised on appeal.

*Exceptions sustained.*