# THE STATE OF NEVADA, Respondent, *v.* FLOYD LOVELESS, Appellant.

No. 3385

April 21, 1943. 136 P. (2d) 236.

18

*Alan Bible,* Attorney-General, *W. T. Mathews* and *Geo. P. Annand,* Deputy Attorneys-General, *George F. Wright,* District Attorney of Elko County, and *A. L. Puccinelli,* former District Attorney of Elko County, for Respondent.

*Taylor H. Wines,* of Elko, for Appellant.

## OPINION

By the Court, DUCKER, J.:

The defendant was informed against and tried in the district court of the Fourth judicial district of Elko County, for the murder of A. H. Berning. The jury returned a verdict as follows: "We, the jury impaneled and sworn to try the above entitled case, do hereby find the defendant, Floyd Loveless, guilty as charged in the Information."

Upon this verdict the court pronounced judgment of death against the defendant. He has appealed from this judgment. After the appeal was argued and submitted in this court, the question of the effect of the verdict upon the judgment was suggested by this court. The case was reopened and reset for argument and briefs were called for from the respective parties on the point, which briefs have been furnished and oral argument heard.

It will be observed that the verdict does not designate

the degree of the crime found. By section 121 of an act concerning crimes and punishments (section 10068 Nev. Comp. Laws 1929) it is provided: "All murder which shall be perpetrated by means of poison, or lying in wait, torture, or by any other kind of wilful, deliberate and premeditated killing, or which shall be committed in the perpetration, or attempt to perpetrate, any arson, rape, robbery, or burglary, * * * shall be deemed murder of the first degree; and all other kinds of murder shall be deemed murder of the second degree; and the jury before whom any person indicted (or informed against) for murder shall be tried, shall, if they find such person guilty thereof, designate by their verdict whether it be murder of the first or second degree; but, if such person shall be convicted on confession in open court, the court shall proceed, by examination of witnesses, to determine the degree of the crime, and give sentence accordingly."

■ By reason of this statute is the verdict so fatally defective that no judgment could be rendered on it? We are of the opinion that it is. The statute leaves no room for doubt or speculation as to its intent and purpose to require the jury to designate by their verdict the degree of the crime. This duty imposed by statutory mandate of unequivocal meaning was disregarded by the jury. They returned a verdict, which, even though we were permitted to go to the information in an attempt to ascertain their intention, would still be equivocal. But the question is not an open one in this jurisdiction. In State v. Rover, 10 Nev. 388, 21 Am. Rep. 745, it was decided that a judgment of death based on such a verdict was not warranted. The facts in that case were the same as in the instant case. In that case the defendant was indicted and tried for murder. The jury returned a general verdict as follows: "We, the undersigned jurors in the case of the State of Nevada against J. W. Rover, defendant, indicted for the murder of I. N. Sharp, do find the said defendant guilty as charged."

The court, after quoting the above section, said: "By this statute, murder is divided into first and second degrees, depending upon the particular circumstances in which the crime is committed, and whether it be of the first or second degree is a fact to be specially found from the evidence adduced, without reference to any special facts which may be stated in the indictment. In case of a trial, the jury before whom the trial is had, if they find the defendant guilty, are required to find this fact, and to designate by their verdict whether the guilt be of the first or second degree; and in case of a plea of confession, the court is required to determine this question of fact by the examination of witnesses in open court. It is, therefore, apparent, from the plain and positive provisions of the statute, that a verdict which fails to designate the degree of murder of which the jury find the defendant guilty, is so fatally defective that no judgment or sentence can be legally pronounced thereon."

This rule was followed in State v. Lindsey, 19 Nev. 47, 5 P. 822, 3 Am. St. Rep. 776, and has not been overruled or modified. The court in State v. Rover, supra, declared that its interpretation of the statute was not only in accord with its plain and positive language, but was supported by a long train of decisions in other states having statutes the provisions of which are similar to ours, quoting from some, and citing many.

In Bishop's New Criminal Procedure, vol. 3, 2d Ed., section 595, appears the following: "That the verdict is imperfect and void,—when silent as to the degree, is the doctrine of the great majority of the authorities, and probably the most in harmony with the reason of the thing; namely, that the legislature intended this provision to be mandatory to make sure of the jury's taking into their special consideration the distinguishing features of the degrees, and passing thereon. Therefore, if the verdict fails to state on its face the degree, the court cannot give judgment on it, but must award a second trial."

See note 77 at the bottom of the page for long list of citations in support of the text, among which appears State v. Rover. As of the same effect are the following recent decisions: Jones v. State (Ark.), 161 S. W. 2d 173; Wilson v. State, 129 Fla. 891, 176 So. 845; Kent v. Lauthers, 95 W. Va., 245, 120 S. E. 598; Orner v. State, 65 Tex. Cr. R. 137, 143 S. E. 935.

In an earlier case the supreme court of California in conformity with its former decisions held invalid a verdict which did not specify the degree of murder, and reversed the judgment and order refusing a new trial. The Attorney-General confessed error. People v. O'Neil, 78 Cal. 388, 20 P. 705.

Counsel for the state insist that the information charges murder of the first degree, and contend that as the verdict finds the defendant guilty as charged in the information, it is thus made certain that the jury intended the first degree in their verdict. The information charges in substance, that the defendant "* * * did then and there, wilfully, unlawfully, feloniously, with malice aforethought, and with intent then and there to kill one A. H. Berning, shoot, etc."

■ We will concede that the information is sufficient to support a verdict of murder of the first degree, but it was as good for murder of the second degree as the first degree. So a reference to it, if it were permissible, would not make the intention of the jury certain.

■ But intention is beside the question. A fact, by statute made essential to the efficacy of the judgment, is missing from the verdict and cannot be imported into it by reference to the information or by conjecture or anything of the kind. The contention that the court is authorized in this case to take into view both the verdict and the information to determine the degree of which the jury intended to find the defendant guilty, was denied in State v. Rover, supra, as contrary to the plain language and spirit of the act. On this point the court further said: "* * * in our opinion, the court is not

authorized, in any case, to refer to the indictment in order to determine the degree of murder of which the jury find the accused guilty; but on the contrary, that the true intent and purpose of the act were to impose upon the jury the duty of designating by their verdict, distinctly and unequivocally, the degree of the crime, and not leave it to be inferred or conjectured therefrom. It therefore follows that the verdict is fatally defective, and for that reason the judgment of the district court should be reversed."

This is a sound ruling and states the law of the present case. We are aware that there are a few cases which hold, on statutes similar to ours, that it is permissible to take into consideration the indictment or information, the instructions, and even the evidence in interpreting a verdict which does not unequivocally declare the degree found. We do not agree with them.

When an indictment or information is good for either murder of the first or second degree, it furnishes no aid whatever in the interpretation of a verdict that does not designate the degree, and a presumption against a defendant from such a source presumes against human life instead of in favor of it. The instructions and evidence are equally fallible in this respect. It is a fact that juries, out of charity for the faults and weaknesses of the human race, sympathy for the prisoner, or other mistaken view of the law or facts, often lessen the offense of murder of the first degree to second degree, and often a verdict is a compromise of opinion, State v. Lindsey, supra,—frequently instructions are disregarded. However, the plain and positive language of our statute forbids such unprofitable speculation. We believe that it means what it says, and decline to go afield searching for another meaning. As was said in Los Angeles v. District Court, 58 Nev. 1, 67 P. 2d 1019, we should not speculate beyond the reasonable import of the words of a statute.

But the state's main contention is that the

defect of the verdict was waived because the defendant did not object to it, made no motion in arrest of judgment, or for a new trial, and did not assign it as error in this court. Hence, say counsel for the state, the judgment must stand as pronounced, and execution done accordingly. We are not persuaded to this view, and are of the opinion that the fault of the verdict is of such a nature that it could not be waived. We may note in passing that it is not correct to say that no objection was taken to the verdict. It was deemed excepted to. Section 11027 N. C. L. No duty rests upon a defendant in a criminal action to have corrected a faulty verdict returned against him. He is not called upon to make certain that he is legally convicted.

■ We raised the question of its validity of our own accord because of our opinion, which is quite generally shared, that it is the duty and province of the courts to keep strict watch over and protect fundamental rights in all matters that come before them. State v. Holt, 90 N. C. 749, 47 Am. Rep. 544; Vogel v. State, 124 Fla. 409, 168 So. 539; Wells v. State, 193 Ark. 1092, 104 S. W. 2d 451, 452.

■ In Vogel v. State, supra, the judgment was reversed because of a defective verdict. No advantage was sought to be taken of the verdict when it was returned, and no exception noted. The court said: "It is well settled in this jurisdiction that: 'While, generally speaking, the consideration of the appellate court will be confined to the errors assigned and argued by the plaintiff in error; yet, to this rule there are certain exceptions. Where a jurisdiction or other fundamental error of law is apparent on the face of the record itself, such error may be considered by the appellate court, though it is not assigned.' "

A judgment of death was reversed in Wells v. State, supra, because on a plea of guilty the court instructed the jury that it was to determine only defendant's punishment, so the jury failed to find the degree of crime,

as required by statute, though error in instruction and defectiveness of verdict were not raised by defendant, but by the court on its own motion. Referring to a former decision of the court it was said: "The judgment was reversed for the same reason, that the jury failed to find the degree of the crime, without the question having been raised by counsel on appeal to this court. It was reversed on the court's own motion and the fact that this opinion was not officially reported shows how thoroughly the question is considered settled by this court."

Continuing, the court said: "So in this case, the error in the instructions and the defectiveness in the verdict have not been raised by appellant, but we do so of our own motion, because the instructions given were erroneous and the verdict rendered so defective that no valid judgment could be rendered thereon."

 It is not a mere matter of procedure that the legislature has prescribed, but a substantive law commanding an unequivocal act of the jury as a part of the trial of one charged with murder. If this duty is not performed as directed the accused has not had the full benefit of a jury trial. The fundamental right to a jury trial cannot be waived in a case amounting to a felony so long as the accused has joined issue on the charge. If he cannot waive it as a whole, does it not logically follow that he cannot waive an essential part of it? And is not the designation of the degree of guilt in a murder trial as indispensable as a finding of guilt in general? It is the same in quality though different in degree. The right accorded him in such a case is the right to have the jury pass upon the whole issue. His right to have the jury determine and designate the degree of guilt is highly important because the issue of life or death is involved in it. The statute commands them to do so and to register their action in their verdict in such a way that there can be no mistake about it. When this is done there is no chance for a court to pronounce a

judgment of death on a void verdict, as was done here. When it is not done the court has no jurisdiction to pronounce sentence.

The court said, in State v. Lindsey, supra [19 Nev. 47, 5 P. 823, 3 Am. St. Rep. 776]: "A verdict finding the prisoner guilty of murder, without mentioning the degree, would be a nullity."

How consent or waiver can restore vitality to a verdict that has no legal effect, and thereby transform it into a valid basis for a sentence of death, is not discernible. Nor has the state's counsel suggested any theory to convince us that such a miracle can be worked. The facts necessary to show guilt in a murder case, as well as the degree of guilt, must be judicially ascertained in the mode prescribed by law before any judgment can be rendered. It is not within the power of the accused, or his counsel, to consent to another mode.

On the authority of Blackstone, Mr. Justice Harlan, in his dissenting opinion in Schick v. United States, 195 U. S. 65, 84, 24 S. Ct. 826, 833, 49 L. Ed. 99, 1 Ann. Cas. 585, stated the principle applicable here.

"The natural life," he said, "cannot legally be disposed of or destroyed by any individual, neither by the person himself, nor by any other of his fellow creatures, merely upon their own authority. * * * The public has an interest in his life and liberty. Neither can be lawfully taken except in the mode prescribed by law. That which the law makes essential in proceedings involving the deprivation of life or liberty cannot be dispensed with or affected by the consent of the accused, much less by his mere failure, when on trial and in custody, to object to unauthorized methods."

In Bishop's New Criminal Procedure, the rule is thus stated: "Though formalities ordained for the ease and protection of the litigant may be waived, what is of the essence of a vital judgment cannot be." Sec. 123, par. 3, 73; 4th ed.

And again: "There can be no waiver of what leaves the record destitute of parts essential to a judgment."

In 23 C. J. S., Criminal Law, sec. 1417, pages 1114, 1115, the text reads: "On a trial involving deprivation of life or liberty, accused cannot waive any essential matter, but must be considered as standing on all his legal rights, and waiving nothing."

In People v. Titus, 85 Cal. App. 413, 259 P. 465, 467, the court said: "But while the defendant may waive formalities established for his protection, he cannot waive that which 'is of the essence of valid judgment.'"

To the same effect are: Stewart v. State, 41 Ohio App. 351, 181 N. E. 111; State v. Adair, 1 W. W. Har., Del., 558, 117 A. 20; State v. Oakes, 95 Me. 369, 50 A. 28; State v. Snider, 32 Wash. 299, 73 P. 355.

■ Counsel for the state cite in their briefs cases from this state and decisions and authorities from other jurisdictions on the claim of waiver. We have examined them all with care and find none which, in our opinion, is in point. For the most part they show a waiver of some formality in the nature of a personal privilege accorded a defendant, and not an essential matter. The rule in this respect is stated in State v. Vanella, 40 Mont. 326, 106 P. 364, 366, 2 Ann. Cas. 398, as follows: "* * * The rights guaranteed to one accused of crime fall naturally into two classes: (a) Those in which the state, as well as the accused, is interested; and (b) those which are personal to the accused, which are in the nature of personal privileges. Those of the first class cannot be waived; those of the second may be." Commonwealth v. Petrillo, 340 Pa. 33, 12 A. 2d 50; 8 R. C. L. sec. 23, 69; 14 Am. Jur., sec. 119, 848.

The cases cited by counsel fall generally into the second class. We will not comment on all of them and thereby prolong this opinion. State v. Lewis, 59 Nev. 262, 263, 91 P. 820, was stressed by counsel for the state in the oral argument. In that case it was held that the failure of the court to give the statutory admonition to the jury embodied in sec. 10991 N. C. L., at each adjournment of the court, was waived by failure of the defendant to move for a new trial on that ground.

While the statute declares a duty that should be strictly complied with, as we held in that case, clearly it is not an indispensable formality. Its omission would not necessarily prevent a fair trial. If properly raised in the court below it might be cause for a reversal unless the state could sustain the burden of showing that no prejudice resulted to the defendant therefrom. This burden was sustained in the case of State v. Gray, 19 Nev. 212, 8 P. 456, and the omission held not cause for a reversal. Clearly the giving of this admonition does not go to the essence of a valid conviction.

In 23 C. J. S., Criminal Law, sec. 1417, p. 1115, it is regarded in the nature of a personal privilege. State v. Lewis is cited therein in support of the following text: "It has been held, however, that accused may waive any constitutional * * * or statutory right which is in the nature of a personal privilege, and which he can waive without affecting the rights of others or the jurisdiction of the court as to the subject matter and without detriment to the public." See section 1417, note 37, p. 1115 for said citation.

While it must be conceded that the admonition required by said sec. 10991 N. C. L. is for the benefit of the state, also its omission in a given case would not necessarily result in prejudice to the state. Whereas the failure of the jury to designate in their verdict the degree of murder has in effect denied the defendant a trial by jury. People v. Hall, 199 Cal. 451, 249 P. 859–861.

The case of Frank v. State, 142 Ga. 741, 83 S. E. 645, L. R. A. 1915D, 817, is in the same class. It was held that the absence of the accused at the reception of the verdict was a mere incident of the trial and not having been raised in motion for a new trial, was waived, and that his absence did not render the verdict a nullity. There is no analogy between that case and the one at bar. Lastly, the case of State v. Grier, 11 Wash. 244, 39 P. 874, is urged upon us as stating the true rule to be followed in this case on the question of waiver. It is

sufficient to say as to this contention, that the verdict of murder in the second degree was not void as in the instant case. The indictment in that case was for murder of the first degree by the administration of poison, and the court held that the defendant could be convicted of second degree. The same was held in State v. Lindsey, supra. If we should grant the contention of counsel for the state that the accused by his silence waived the defect of the verdict, what did he waive? He waived the right to urge the point. Could that validate the verdict? No. It is still void. Will the court permit the defendant to go to his death on a void verdict? Such a course would be against reason and the common dictates of humanity. The judgment should be reversed.

In defendant's assignment of errors we find none that is well taken. At least there is none that tended to his prejudice in respect to a substantial right.

The judgment is reversed, the verdict set aside, and the cause remanded for a new trial.