CHRISTOPHER FIEGEHEN, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 42088

June 9, 2005                                     113 P.3d 305

[Rehearing denied July 7, 2005]

*Richard F. Cornell,* Reno; *Law Offices of Richard W. Young* and *Richard W. Young,* Reno, for Appellant.

*Brian Sandoval,* Attorney General, Carson City; *Scott W. Doyle,* District Attorney, and *Mark B. Jackson,* Deputy District Attorney, Douglas County, for Respondent.

# OPINION

By the Court, GIBBONS, J.:

A jury found appellant Christopher Fiegehen guilty of murder with the use of a deadly weapon, attempted murder with the use of a deadly weapon, burglary while in possession of a deadly weapon, and invasion of the home while in possession of a deadly weapon.[2]

---

[2]Upon the State's motion prior to sentencing, the district court dismissed the count of burglary while in possession of a deadly weapon as redundant to the home invasion count.

The jury was not instructed that, under NRS 200.030(3), if it found Fiegehen guilty of murder, it was required to designate whether the murder was of the first or second degree. Consequently, the jury's verdict did not specifically designate whether Fiegehen committed murder of the first or second degree. In resolving this appeal, we have revisited this court's precedent holding that such a verdict renders a murder conviction fatally defective and a nullity. We conclude that where, as here, the verdict as a whole unequivocally establishes a finding of felony murder, the verdict satisfies the command of NRS 200.030(3) because felony murder is first-degree murder as a matter of law. We further conclude that Fiegehen's remaining assignments of error do not warrant reversal, and we affirm the judgment of conviction in its entirety.

## FACTS

In the early morning hours of February 10, 2002, an intruder entered the Douglas County residence of Alan and Lorelle Chorkey, killed Alan and shot Lorelle twice in the chest. At approximately 5:00 a.m. that morning, Lorelle placed a 911 call. She reported to the dispatcher that she had been shot and that her husband was on the back deck of their home fighting with an intruder. Within minutes, the 911 connection went dead. The dispatcher was unable to reestablish contact and alerted Sheriff's and medical personnel to the call. Sheriff's deputies arrived at the Chorkey residence shortly thereafter and found Lorelle alive, lying on the floor in a pool of blood. The telephone line nearby had been cut. Alan's body was discovered on an elevated deck on the southeast corner of the residence. The pathologist who conducted the postmortem examination concluded that Alan bled to death after his jugular vein and carotid artery had been severed by a sharp instrument.

Evidence discovered during the ensuing investigation implicated Fiegehen as the primary suspect. Authorities were unable to locate him, however, because he abruptly fled Nevada on the day of the crime. Nearly two months later, on April 9, 2002, he was stopped and questioned by police officers in Vincennes, Indiana, where he was apprehended after a routine check revealed an outstanding warrant for his arrest in Nevada for homicide. He was eventually returned to Nevada to face criminal charges.

On July 22, 2002, the State filed a criminal information charging Fiegehen with murder with the use of a deadly weapon, attempted murder with the use of a deadly weapon, burglary while in possession of a deadly weapon, and home invasion while in possession of a deadly weapon. The information alleged that Fiegehen

committed the murder: (1) with malice aforethought by means of a willful, deliberate and premeditated killing; (2) in the perpetration or attempted perpetration of a burglary; or (3) in the perpetration or attempted perpetration of a home invasion.

On June 23, 2003, the parties filed a stipulation in which Fiegehen waived his right to a separate penalty hearing before the jury if he was found guilty of first-degree murder and agreed to have the sentence imposed by the district court. The jury trial commenced on the same day.

The State presented abundant, overwhelming evidence at trial establishing that Fiegehen was the assailant. For example, Lorelle testified that she was "absolutely positive" that Fiegehen was the intruder who shot her. In addition, the State presented evidence establishing that a knife and dark colored baseball cap discovered at the crime scene next to Alan's body both belonged to Fiegehen. Analysis of the sweatband of the cap and blood on the knife disclosed DNA consistent with Fiegehen's DNA profile. DNA analysis also established that blood found in Fiegehen's Ford Mustang was consistent with Alan's DNA profile to a statistical probability greater than 1 in 500 billion.

Lorelle's daughter, Alane Dockstader, testified that although she resided at the Chorkeys' house, she was not home on the morning her parents were attacked. She explained that she had ended a dating relationship with Fiegehen a month or two before the attack, but Fiegehen had continued to contact her in attempts to rekindle the relationship. In January 2002, she became frightened and obtained a temporary protective order against him. The night before the attack on her parents, however, she met Fiegehen in Carson City and told him she had started dating another man. After spending several hours with Fiegehen, she left him around midnight to meet her new boyfriend at a friend's home, where she remained until about noon the following day. She then returned to the Chorkey residence to discover that her parents had been attacked earlier that morning. Alane also testified that Fiegehen called her on her cell phone numerous times after they parted that night, questioning her about her whereabouts and urging her to meet him again. During one such conversation, they screamed and fought. Although he continued to call, Alane did not answer his subsequent calls.

Fiegehen's cell phone records established that he called her cell phone ten times between midnight and 1 a.m. on February 10, 2002. At 6:39 a.m. that morning, Fiegehen called his father and left a voice mail at his father's place of employment. His father testified that Fiegehen left the message: "Dad, I love you. You've treated me great. Take care of my dogs and cats."

At trial, Alane identified the knife and baseball cap that were discovered at the crime scene as belonging to Fiegehen. Testimony also established that Fiegehen had purchased a .357 caliber pistol at a gun show. Crime scene investigators discovered spent .357 shell casings at the Chorkeys' home. Additionally, live .357 cartridges were found in the glove compartment of Fiegehen's car, as well as at the crime scene. A firearms expert testified that all of the cartridges appear to have been remanufactured, were of the same style and variety, and were hollow point copper jacket .357 bullets.

One of the officers who apprehended Fiegehen in Indiana testified that Fiegehen remarked at the time of his arrest: "You're going to be famous," and "You don't know who you have in custody." The officer also testified that Fiegehen was in possession of three knives at the time he was apprehended. A deputy sheriff at the Indiana jail where Fiegehen was briefly incarcerated testified that, upon delivering Nevada extradition papers to him, Fiegehen stated: "It must be for the two people I killed out there."

The theory of the defense was simply that Fiegehen did not commit the crimes charged; his trial counsel argued for a complete acquittal. Fiegehen testified that when he entered the victims' residence that morning, he discovered Lorelle already wounded and covered with blood. When she told him to check on her husband, he located Alan lying on the floor unresponsive, and "from what [he] could tell, it seemed like he was deceased." Fiegehen claimed that he then returned to his car to locate his cell phone and call 911, saw emergency vehicles arriving, and drove away from the scene to return to Carson City.

Neither party presented a theory of the case that specifically implicated second-degree murder or sought jury instructions pertaining to second-degree murder. The instructions advised the jury only on the State's three alternative theories of first-degree murder and contained no mention of second-degree murder. The jury was further instructed:

> All verdicts returned in this case must be unanimous. In considering Count I, murder with the use of a deadly weapon, the State has alleged three alternative theories of first-degree murder.
> You do not have to agree on the theory of murder in the first degree, it is sufficient that each of you find beyond a reasonable doubt that the murder, under any one of the three theories, was murder of the first degree.

The jury began its deliberations on the afternoon of July 14, 2003, and returned its verdict the following afternoon. The jury simply found Fiegehen guilty of "murder with the use of a deadly

weapon, a category A felony in violation of Sections 200.010, 200.030, and 193.165 of the Nevada Revised Statutes.'' The jury also found Fiegehen guilty of attempted murder with the use of a firearm, burglary while in possession of a firearm or other deadly weapon, and invasion of the home while in possession of a firearm or other deadly weapon.

In response to a request by defense counsel, the jury was polled, and all of the jurors simply confirmed that they were in agreement with the verdicts that were read. There was no objection or further discussion of the efficacy of the verdict at that time.

On the morning of the scheduled sentencing hearing, well after the jury had been discharged, defense counsel orally requested the district court to declare the verdict on the murder count void because it failed to designate the degree of murder. The district court denied the motion, conceding that its decision was based on the totality of the circumstances. Before sentencing, however, the district court granted the State's motion to set aside the verdict respecting the burglary as redundant to the home invasion verdict. The district court then sentenced Fiegehen to serve two consecutive terms of life in the Nevada State Prison without the possibility of parole for murder (a sentence consistent with a finding of first-degree murder), two consecutive terms of 90-240 months for attempted murder with the use of a deadly weapon, and a term of 72-180 months for home invasion while in possession of a deadly weapon. The district court ordered all terms to be served consecutively. This appeal followed.

## DISCUSSION

### The validity of the jury's verdict

Fiegehen contends that the murder conviction in this case is invalid, and he correctly observes that Nevada law unequivocally provides that a jury's failure to designate the degree of murder in its verdict renders a murder conviction fatally defective and a nullity. NRS 200.030(3) provides: ''The jury before whom any person indicted for murder is tried shall, if they find him guilty thereof, designate by their verdict whether he is guilty of murder of the first or second degree.'' Additionally, in a consistent line of cases dating back to 1875, this court has held that under this statutory directive, an uncorrected failure to designate the degree of murder in the verdict renders the verdict a nullity.[3]

---

[3]*Sellers v. State,* 108 Nev. 1017, 843 P.2d 362 (1992); *State v. Loveless,* 62 Nev. 17, 25, 136 P.2d 236, 240 (1943); *State v. Lindsey,* 19 Nev. 47, 5 P. 822 (1885); *State of Nevada v. Rover,* 10 Nev. 388 (1875).

Fiegehen also correctly contends that, contrary to Nevada precedent, the district court considered the totality of the circumstances in denying the motion to set aside the murder verdict. In *Sellers v. State,* for example, this court rejected the State's arguments that the courts can assess the validity of such a defective verdict by reference to the indictment or information, the jury instructions, the totality of circumstances, " 'or by conjecture or anything of the kind.' "[4] This court observed:

> The jury is required to designate in its verdict whether the defendant is guilty of murder of the first or second degree. NRS 200.030(3). The designation of the degree of guilt in a murder verdict is as indispensable as a finding of guilt in general. The district court is not free to consider the "totality of the circumstances" to decide the degree of murder where the jury omits the degree from the verdict. "A fact, by statute made essential to the efficacy of the judgment, is missing from the verdict and cannot be imported into it by reference to the information or by conjecture or anything of the kind." Therefore, we reject the state's argument that the district court could have declared the original verdict to be for first degree murder based on the totality of the circumstances.[5]

In *Loveless v. State,* this court also specifically rejected the argument that such a defect in the verdict can be waived by a defendant's failure to object or request that the jury designate the murder as first or second degree.[6] *Loveless* explained that the requirement to designate the degree of murder "is not a mere matter of procedure that the legislature has prescribed, but a substantive law commanding an unequivocal act of the jury as part of the trial of one charged with murder."[7] Where the jury fails to designate the degree, the court reasoned, the defendant has not had the "full benefit of a jury trial" and "[t]he fundamental right to a jury trial cannot be waived in a case amounting to a felony so long as the accused has joined issue on the charge."[8] The court went on:

> The facts necessary to show guilt in a murder case, as well as the degree of guilt, must be judicially ascertained in the mode prescribed by law before any judgment can be rendered. It is

[4]108 Nev. at 1019, 843 P.2d at 364 (quoting *Loveless,* 62 Nev. at 22, 136 P.2d at 238).

[5]*Id.* at 1018-19, 843 P.2d at 364 (quoting *Loveless,* 62 Nev. at 22, 136 P.2d at 238).

[6]62 Nev. at 23-29, 136 P.2d at 239-41.

[7]*Id.* at 25, 136 P.2d at 239-40.

[8]*Id.* at 25, 136 P.2d at 240.

not within the power of the accused, or his counsel, to consent to another mode.[9]

The State argues, on the other hand, that this court's more recent holding in *Graham v. State*[10] provides a sound basis to reexamine and abandon the "rigid and formalistic application of NRS 200.030(3)" as interpreted in *Loveless* and *Sellers.* In *Graham,* this court explained that certain categories of first-degree murder only require proof that the murder was committed with malice (or in the case of felony murder, with the intent to commit the enumerated felony). At the time Graham was charged, these types of murder were those perpetrated by means of poison, lying in wait, child abuse[11] or torture, those committed in the perpetration of certain enumerated felonies, and those committed to avoid arrest or to effect an escape from custody. *Graham* observed that these types of murders are "legislatively deemed to be murder of the first degree."[12]

*Graham* further explained:

> The only subcategory of first-degree murder not so specifically defined is that accomplished by "willful, deliberate and premeditated killing," referred to in the second phrase of NRS 200.030(1)(a). To sustain a conviction under this subcategory of first-degree murder, proof of willfulness, deliberation, and premeditation . . . must be established. Failure to establish such proof renders the offense murder in the second degree.
>
> By contrast, when an enumerated first-degree murder is charged . . . the presence or absence of deliberation and premeditation is of no consequence. Such murders do not fall within the category of murder that can be reduced in degree by failure to prove deliberation and premeditation. . . .
>
> We therefore hold that it is unnecessary to instruct juries on deliberation, premeditation, and second-degree murder when proofs in the case can only support a theory of guilt described within one of the specifically enumerated categories set forth in NRS 200.030(1).[13]

---

[9]*Id.* at 26, 136 P.2d at 240.

[10]116 Nev. 23, 992 P.2d 255 (2000).

[11]Graham was charged under the former version of NRS 200.030(1)(a), which defined first-degree murder as a murder perpetrated by means of "poison, lying in wait, torture or child abuse, or any other kind of willful, deliberate and premeditated killing." In 1999, the Legislature amended NRS 200.030(1) by removing child abuse from subsection (1)(a) and placing it in subsection (1)(b), the subsection defining felony murder. This amendment effectively made murder committed in the perpetration of child abuse a category of first-degree felony murder.

[12]116 Nev. at 28, 992 P.2d at 258.

[13]*Id.* at 28-29, 992 P.2d at 257-58. Notably, Graham was charged by information with murder *solely* on the theory that he committed first-degree mur-

*Graham* also specifically renounced " 'lenity' as a separate basis for giving instructions on murder of the second degree."[14] *Graham* noted:

> Of course, in any case where there is evidence supporting either first- or second-degree murder, a jury is entitled to extend lenity and convict of the lesser offense. While juries may not be instructed on this issue, convictions rendered on this basis, in accord with our prior decisions, may be upheld.[15]

The State appropriately cites *Graham* as a starting point for a re-examination of our precedent addressing NRS 200.030(3). *Graham* emphasized and concluded that second-degree murder is not an option where a defendant is charged solely with first-degree murder under a theory alleging either felony murder or murder committed by one of the means enumerated in NRS 200.030(1)(a) *and* the theory and proofs presented at trial do not implicate second-degree murder.

Under the *Graham* rationale, and in light of the theory of the defense presented by Fiegehen below, we conclude that he was not entitled to a second-degree murder instruction with respect to the two alternative theories of first-degree felony murder. We further reject Fiegehen's contention that, despite the defense strategy to forego a theory of defense implicating second-degree murder and to not seek instructions on such a theory, the trial court was nonetheless required to instruct on second-degree murder simply because the State alleged in the alternative that Fiegehen committed a willful, deliberate, premeditated killing. This court is reluctant to interfere with strategic, tactical decisions of a defendant and his counsel respecting how the defense case should be presented to the jury, especially where the proof in support of such a theory is deficient.[16]

More importantly, here, in addition to a finding of murder, the jury clearly found that appellant committed the predicate felonies underlying the first-degree felony murder theories. Thus, the jury unquestionably found appellant guilty of first-degree felony murder *as a matter of law.* As we observed in *Graham,* such a murder

---

der by means of child abuse. Unlike the information filed against Fiegehen, the State did not allege in the alternative that Graham committed a willful, deliberate and premeditated first-degree murder.

[14]*Id.* at 31 n.8, 992 P.2d at 260 n.8 (citing *State v. Lindsey,* 19 Nev. 47, 5 P. 822 (1885)).

[15]*Id.*

[16]We do not hold, however, that the district court was precluded from giving an instruction on second-degree murder.

does not fall within the category of murder that can be reduced by the jury to second-degree murder. Therefore, in this case it was unnecessary for the court below to evaluate the totality of the circumstances in determining the efficacy of the verdict. A finding of first-degree felony murder can be clearly and confidently discerned solely from the jury's verdict as a matter of law.

Accordingly, we conclude that reversing the conviction based on the jury's failure to expressly include the words "first-degree murder" in its verdict would merely elevate form over substance in this case. Given the jury's separate findings of guilt on the charges of murder, burglary, and home invasion, the fact that the jury found first-degree felony murder, as a matter of law, is not subject to any serious conjecture or speculation. Consequently, we clarify our prior precedent and hold that where, as here, the verdict itself establishes a finding of first-degree murder as a matter of law, the verdict satisfies the dictates of NRS 200.030(1).

Our conclusion in this respect finds support in the holdings of other jurisdictions. In *People v. Mendoza,* for example, the California Supreme Court construed the California Penal Code, overturned contrary prior precedent, and upheld a first-degree felony murder conviction based on a verdict that failed to expressly designate the degree of murder.[17] The court concluded that because the defendants in that case had not been convicted of a crime which is distinguished into degrees within the meaning of the California Penal Code, the requirement in the code that the jury specify the degree of murder did not apply.[18] The court further concluded that the trial court's failure to instruct the jury on offenses other than first-degree felony murder or on the differences between the degrees of murder did not violate the code or the defendants' right to have a jury determine questions of fact. Although the statute and theory of the prosecution at issue in *Mendoza* differ from those involved in the instant case, the reasoning of *Mendoza* supports our conclusion that reversal is not warranted in this case.

Unlike the instant case, the prosecution's *only* murder theory in *Mendoza* was that the defendants committed first-degree felony

[17]4 P.3d 265 (Cal. 2000). Notably, *Mendoza* overruled *People v. McDonald,* 690 P.2d 709 (Cal. 1984), which held that the California code did indeed require the jury to designate the degree of the murder in a first-degree felony-murder prosecution, and its failure to do so rendered the verdict by operation of law a verdict of second-degree murder.

[18]As *Mendoza* explains: "Under [California] Penal Code section 1157, '[w]henever a defendant is convicted of a crime . . . which is distinguished into degrees,' the trier of fact 'must find the degree of the crime . . . of which he is guilty. Upon the failure of the [trier of fact] to so determine, the degree of the crime . . . of which the defendant is guilty, shall be deemed to be of the lesser degree.'" 4 P.3d at 269 (footnote omitted).

murder during the perpetration of a burglary and robbery.[19] The defendants did not argue or request instructions on any other theory of murder. No instructions were given on malice aforethought, premeditation or deliberation, and the instructions did not mention any form of criminal homicide other than first-degree felony murder. The verdict forms also did not give the jury the option to convict of second-degree murder or any other form of homicide.[20] The jury returned verdicts finding both defendants "guilty of the offense charged in Count I," *i.e.,* first-degree felony murder, but the jury did not specify that its verdicts were for first-degree murder.

Similar to this court's analysis in *Graham,* the *Mendoza* opinion first noted that in California, there are no degrees of felony murder. "[A]s a matter of law, a conviction for a killing committed during a robbery or burglary can *only* be a conviction for first degree murder."[21] *Mendoza* further observed:

> [W]here, as here, the trial court correctly instructs the jury only on first degree felony murder and to find the defendant either not guilty or guilty of first degree murder, section 1157 does not apply. Under these circumstances, as a matter of law, the *only* crime of which a defendant may be convicted is first degree murder, and the question of degree is not before the jury to make. . . . Thus, a defendant convicted under these circumstances has not, under the plain and commonsense meaning of section 1157, been "convicted of a crime . . . which is distinguished into degrees."[22]

Thus, *Mendoza* concludes that the jury need not specify the degree of murder where: (1) the prosecution's only murder theory is felony murder, which is first-degree murder as a matter of law; (2) the trial court properly instructed the jury to return either an acquittal or a conviction of first-degree murder; and (3) the jury finds the defendant guilty of felony murder.[23]

We acknowledge that in the instant case, the State alleged and argued a theory of willful, deliberate, premeditated first-degree murder, as well as alternate theories of first-degree felony murder. Moreover, Nevada's statute differs markedly from section 1157 of the California Penal Code. Section 1157 requires the jury to find the degree of any crime "which is distinguished into degrees."

---

[19]Mendoza's co-defendant conceded his guilt of the substantive charges. *Id.* at 271.

[20]*Id.* at 269-70.

[21]*Id.* at 274.

[22]*Id.* at 275.

[23]*Id.* at 269.

NRS 200.030(3), on the other hand, requires a "jury before whom any person *indicted for murder* is tried" to designate that the defendant is guilty of first- or second-degree murder. (Emphasis added.) The Nevada provision applies specifically to jury trials where a defendant is charged with "murder," and does not expressly exclude any charge of murder that cannot be distinguished by operation of law into murder of the first or second degree.

Nonetheless, we find the analysis in *Mendoza* helpful in distinguishing the instant case from the cases addressed in our prior precedent. As noted above, the jury found Fiegehen guilty of an unspecified degree of murder, burglary, and home invasion, all arising out of the same factual transactions and occurrences. Although it is possible that some jurors may have found that Fiegehen committed a willful, deliberate, premeditated murder, or even a second-degree murder because they were unable to find willfulness, deliberation or premeditation, it is unassailable that each juror nonetheless found that a murder of some kind was committed. By also returning guilty verdicts on the burglary and home invasion counts, we can confidently conclude that all of the jurors found that a murder was committed during the perpetration of a burglary and home invasion. Under NRS 200.030(1)(b), such a murder is by definition first-degree murder. Based on the entire verdict, therefore, we have no difficulty in concluding as a matter of law that the jury's verdict quite clearly found that Fiegehen committed first-degree felony murder. In such a case, requiring the jury's verdict to specifically designate a finding of first-degree murder is not only dispensable, but redundant.

Our decision today is also consistent with the California Supreme Court decision in *People v. San Nicolas,* which held that where the jury did not expressly state that it convicted the defendant of first-degree murder, but did specify in its verdict that it found a willful, deliberate, premeditated killing, "[t]here is no logical reason to compel the fact finder to articulate a numerical degree when, by definition, 'first degree [murder]' and '[willful, deliberate, and premeditated killing]' are one and the same thing."[24] Other courts as well have held that, despite statutory provisions requiring specification in the verdict of the degree of murder, verdicts that failed to do so were not void if only one degree of murder could have been returned.[25]

---

[24]101 P.3d 509, 524 (Cal. 2004) (quoting *People v. Goodwin,* 249 Cal. Rptr. 430 (Ct. App. 1988)).

[25]*See Gaines v. Leverette,* 266 S.E.2d 451 (W. Va. 1980) (although it is always preferable that the jury comply with the statute and specify the degree, if there can be only one degree of murder based on the proof and instructions, the court would not void a verdict because it did not specify the degree);

We emphasize that our holding today is narrow and limited. We continue to adhere to our prior precedent precluding analysis of the totality of the circumstances in evaluating the validity of a murder verdict that fails to designate the degree. In all murder cases, the trial courts should provide verdict forms requiring the jury to specify the degree of murder. But where, as here, it can be clearly discerned by reference only to the verdict itself that the jury found first-degree felony murder as a matter of law, we conclude that the verdict satisfies the requirements of NRS 200.030(3).

*Remaining contentions*

Fiegehen next contends that the State presented insufficient evidence to support the jury's finding of guilt on the charge of home invasion. We disagree.[26] Our review of the record reveals sufficient evidence to establish guilt beyond a reasonable doubt as determined by a rational trier of fact.[27]

In relevant part, NRS 205.067(1) provides that a person is guilty of home invasion when the person "forcibly enters an inhabited dwelling without permission of the owner." NRS 205.067(5)(a) defines the term "forcibly enters" as "entry of an inhabited dwelling involving any act of physical force resulting in damage to the structure." Lorelle Chorkey testified that she got out of bed and walked into the master bathroom to investigate after she heard something jumping onto the deck located off the master bathroom. Upon entering the bathroom, she heard someone call her name, as she turned, she was shot in the chest. She saw three flashes and then saw Fiegehen standing in front of her.

Additionally, a forensic investigator who examined the crime scene testified that he found evidence of a forced entry into the home. He explained that glass in the double set of wood framed

---

*Buchanan v. State,* 488 S.W.2d 724 (Tenn. 1973) (although statute required the jury to ascertain in its verdict the degree of murder, the court held in a post-conviction proceeding that jury's express finding in verdict of murder perpetrated in commission of a robbery satisfied the statute because the language of verdict described murder in the first degree); *Briggs v. State,* 501 S.W.2d 831 (Tenn. Crim. App. 1973) (citing to *Buchanan* in rejecting a post-conviction claim that verdict was void for failure to specify degree of murder where verdict specified defendants were found guilty of murder in perpetration of a robbery).

[26]Because we conclude that this contention is without merit, we also reject Fiegehen's contention that the first-degree murder verdict must be set aside because the State failed to prove felony murder based on that predicate felony.

[27]*See Wilkins v. State,* 96 Nev. 367, 609 P.2d 309 (1980); *see also Origel-Candido v. State,* 114 Nev. 378, 381, 956 P.2d 1378, 1380 (1998).

doors accessing the master bathroom from the rear deck had been fractured and the wooden frame of the door had also been damaged. He further explained that the damage could have been caused by bullets. Other evidence found inside the residence, including live and expended rounds of ammunition and a severed telephone line support a finding that Fiegehen entered the dwelling.

The jury could have reasonably inferred from the evidence presented that Fiegehen was guilty of home invasion. It is for the jury to determine the weight and credibility to give conflicting testimony, and we will not disturb the jury's verdict where, as here, substantial evidence supports the verdict.[28]

Despite his trial counsel's failure to object, Fiegehen also contends that the district court committed plain, reversible error by admitting and by failing to give a limiting instruction respecting the evidence that he was in possession of three knives at the time he was apprehended in Indiana.[29] In light of the overwhelming evidence of Fiegehen's guilt, we conclude that the error, if any, had no substantial or injurious effect or influence on the jury's verdict.[30]

## CONCLUSION

We conclude that the jury's failure to designate in its verdict that it found Fiegehen guilty of first-degree murder does not render the verdict void. The verdict at issue here satisfies the requirements of NRS 200.030(3) because the jury's separate findings of guilt on the charges of murder, burglary, and home invasion together establish a finding of first-degree felony murder as a matter of law. We also reject Fiegehen's remaining contentions. Accordingly, we affirm the judgment of conviction in its entirety.

BECKER, C. J., MAUPIN, DOUGLAS, HARDESTY and PARRAGUIRRE, JJ., concur.

---

[28]See *Bolden v. State,* 97 Nev. 71, 624 P.2d 20 (1981); *see also McNair v. State,* 108 Nev. 53, 56, 825 P.2d 571, 573 (1992).

[29]See *Tavares v. State,* 117 Nev. 725, 30 P.3d 1128 (2001).

[30]*Id.* at 732, 30 P.3d at 1132 (citing *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).