JOSEPH ROBERT KAZALYN, Appellant, *v.* THE STATE ON NEVADA, Respondent.

No. 21429

January 24, 1992
825 P.2d 578

*Morgan D. Harris,* Public Defender, and *R. Michael Gardner,* Deputy Public Defender, Clark County, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Rex A. Bell,* District Attorney, *James Tufteland,* Deputy District Attorney, and *Thomas Carroll,* Deputy District Attorney, Clark County, for Respondent.

**OPINION**

*Per Curiam:*

*FACTS*

At approximately midnight on March 20, 1989, appellant Joseph Robert Kazalyn (Kazalyn) and his bride of one month, Judy Pain Kazalyn, argued on the way home from a dinner party. Kazalyn contends they argued about Mrs. Kazalyn's use of

cocaine and the fact that he threw her cocaine out of the car window. The argument resulted in Mrs. Kazalyn exiting the car on Industrial Road near Las Vegas.

Subsequently, Dennis Sweeney (Sweeney) was driving on Industrial Road when he struck an object lying in the roadway. Sweeney stopped his truck and backed up, discovering that he had hit a woman. He got out of his truck and began looking for a vehicle to flag down for assistance. Both Sweeney and his passenger, Pamela Anderson, noticed a car on the southbound shoulder of the road, approximately 150 yards away, when the car's headlights came on and began to approach Sweeney and the victim. Sweeney asked the driver of the car, Kazalyn, to call the police. Sweeney became suspicious when he noticed a woman's purse sitting on the passenger seat next to Kazalyn. Sweeney said, "She was with you, wasn't she?" whereupon Kazalyn smiled and said, "What's happening?" Sweeney then left to call the police.

Shortly thereafter, Anthony Montoya was travelling on Industrial Road when he saw a body lying in the road. He pulled his truck over so that his headlights illuminated the body. He noticed Kazalyn's car about five or ten yards away and went over to find out if the police had been called. He thought Kazalyn was a bystander because Kazalyn did not display any emotion. Montoya got a "creepy feeling" from Kazalyn and went back to his truck because he did not want to be near Kazalyn.

Upon arriving at the scene, the police learned that the woman Sweeney ran over was Kazalyn's wife, and that she had been a passenger in Kazalyn's vehicle. Kazalyn gave a series of three statements to the police, in which he recounted different versions of the events leading to his wife's death.

At the scene of the accident, two pools of Mrs. Kazalyn's blood were found. One pool was found at the point of initial impact by Sweeney's truck, which was connected to the second pool of blood by "drag marks" of blood and flesh. During an examination of Mrs. Kazalyn's body, the police found a tire track on her right thigh which bore the general characteristics of Kazalyn's left rear tire. Mrs. Kazalyn's face also showed signs of bruising, which the medical examiner testified occurred prior to being hit by Sweeney's truck. Mrs. Kazalyn did not have bruises on her face earlier that evening at the dinner party.

Kazalyn stood trial and was convicted by a jury of murder with the use of a deadly weapon. A penalty phase was conducted, whereupon the jury sentenced the defendant to life without the possibility of parole. The sentence was enhanced by a consecutive term of life imprisonment without the possibility of parole for the use of a deadly weapon.

## Issues on Appeal

On appeal, Kazalyn asserts the following errors: (1) there was insufficient evidence to convict him of first degree murder; (2) statements made to the police regarding a polygraph examination and prior bad acts should not have been admitted into evidence; (3) the jury instruction on reasonable doubt violated his due process rights; (4) the jury instructions did not adequately define premeditation; (5) the enhanced penalty for use of a deadly weapon was improper; (6) a separate penalty hearing should not have been held; and lastly, (7) the district court erred in informing the jury that with a sentence of life imprisonment with the possibility of parole, Kazalyn would be eligible for parole in ten years, when he actually would be eligible in twenty years.

## DISCUSSION

### I. *Sufficiency of the evidence.*

### *Standard of Review*

The standard of review for sufficiency of evidence upon appeal is whether the jury, acting reasonably, could have been convinced of the defendant's guilt beyond a reasonable doubt. Edwards v. State, 90 Nev. 255, 258-59, 524 P.2d 328, 331 (1974). Where there is substantial evidence to support the jury's verdict, it will not be disturbed on appeal. Cunningham v. State, 94 Nev. 128, 130, 575 P.2d 936, 937 (1978).

The State's theory at trial was that Kazalyn incapacitated his wife and left her lying in the roadway to be hit by another vehicle. Kazalyn contends that any number of vehicles may have struck the body and continued on without stopping.

While the case against Kazalyn is circumstantial, there was sufficient evidence for the jury to find the defendant guilty of murder in the first degree. The uncontroverted physical and testimonial evidence indicates that Kazalyn deliberately left his wife incapacitated in the roadway and watched while another vehicle struck her helpless form. There was more than sufficient evidence upon which a reasonable jury could find Kazalyn guilty beyond a reasonable doubt.

### II. *Admissibility of certain statements by Kazalyn.*

The decision to admit or exclude evidence, after balancing the prejudice to the defendant with the probative value, is within the discretion of the trial judge. Halbower v. State, 93 Nev. 212,

215, 562 P.2d 485, 486-87 (1977); *see also*, NRS 48.035.[1] The trial court's determination will not be reversed absent manifest error. Lucas v. State, 96 Nev. 428, 431-32, 610 P.2d 727, 730 (1980).

A. *Kazalyn's statements regarding polygraph examinations.*

Kazalyn made three statements to the police wherein he offered several times to take a polygraph examination to prove that his version of the circumstances regarding his wife's death was the truth. Kazalyn initiated the offer to take a polygraph examination in each and every instance. At trial, all three statements were admitted into evidence. Kazalyn argues that the admission of his offers to take a polygraph examination is reversible error.

The case which articulates the standard in Nevada regarding polygraph evidence is Santillanes v. State, 102 Nev. 48, 714 P.2d 184 (1986). There, we held that a defendant's refusal or offer to submit to a polygraph examination is inadmissible and incompetent evidence. *Id.* at 50, 714 P.2d at 186. However, in the recently decided Davis v. State, 107 Nev. 600, 817 P.2d 1169 (1991), this court held that the admission of the defendant's videotaped statement wherein he offered to take a polygraph examination and subsequent prosecutorial references to the offer was harmless error.

The case before us differs from both *Santillanes* and *Davis;* here, the prosecutor did not refer to Kazalyn's offer to take a polygraph examination. There was no emphasis placed on the polygraph offers. This case also differs from *Santillanes* in that Kazalyn's offers to take a polygraph were not introduced into evidence in order to show consciousness of his guilt. Rather, the offers came into evidence simply as part of the interviews between Kazalyn and a police detective.

Generally, a disclosure that a defendant was willing or unwilling to take a lie detector test is inadmissible because it tends to prejudice the jury for or against the defendant. 95 A.L.R.2d 827 (1964). The strength of the evidence against a defendant is one

---

[1]NRS 48.035 states in relevant part:

Exclusion of relevant evidence on grounds of prejudice, confusion or waste of time.

1. Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues or of misleading the jury.

2. Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, waste of time or needless presentation of cumulative evidence. . . .

criterion for determining whether the admission of the defendant's willingness or unwillingness to take a polygraph examination constitutes prejudicial error. *Id.* at 830. Where there is strong evidence of guilt, disclosure of whether the defendant was willing to take a lie detector test tends to be less prejudicial. *Id.*

A defendant's offer to take a polygraph examination tends to strengthen the credibility of the defendant. State v. Freeman, 538 P.2d 1168, 1169 (Ariz.Ct.App. 1975); Coughran v. State, 565 P.2d 688, 691 (Okla.Crim.App. 1977). Where the defendant cannot show he was prejudiced by the admission of his willingness to take a polygraph examination, it is harmless error to admit his statements. *Freeman,* 538 P.2d at 1169; People v. Skiles, 450 N.E.2d 1212, 1220 (Ill. 1983); *Coughran* 565 P.2d at 691. Kazalyn enhanced his credibility by spontaneously offering to take a polygraph examination. He failed to show that the jury was prejudiced against him by admission of the statements. Additionally, there is substantial evidence of his guilt.

This court is not advocating that a defendant's offer to take a polygraph examination be admitted into evidence. We affirm our holding in *Santillanes* that polygraph evidence in any form (whether it be the defendant's offer or refusal to take a polygraph examination or results of the examination) is not admissible unless the parties have stipulated to its admission in writing. Santillanes v. State, 102 Nev. 48, 50, 714 P.2d 184, 186 (1986). However, in the case before us, we hold that admission of Kazalyn's offers to take a polygraph examination was harmless error.

B. *Kazalyn's statements regarding striking his wife prior to their marriage.*

Evidence of prior misconduct is not admissible if its only relevancy is to show that the accused most likely committed the crime because he is of a criminal character; the evidence must be relevant for some other purpose. Daly v. State, 99 Nev. 564, 567, 665 P.2d 798, 801 (1983); *see also,* NRS 48.045(2).[2] This court has recognized that a defendant may be prejudiced by evidence of

---

[2]NRS 48.045 states in relevant part:

2. Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

past crimes; the jury may find guilt more easily when it is known that the defendant has committed other acts of wrongdoing. Nester v. State, 75 Nev. 41, 46, 334 P.2d 524, 527 (1959).

Kazalyn argues that the district court erred when it admitted his statements that he had struck his wife on one occasion prior to their marriage, approximately five weeks before Mrs. Kazalyn's death. The State argues that the statements were highly relevant to the issue of how Mrs. Kazalyn received the bruises on her face prior to her death, and that the evidence is actually favorable to Kazalyn because it shows that he was not in the habit of beating his wife.

The testimony regarding Kazalyn striking his wife is prejudicial, and the State does not make an adequate argument as to how the probative value of the statements outweigh the prejudicial value. However, the decision to admit evidence of prior bad acts is within the discretion of the district court and we cannot say that the admission of the evidence is manifest error. This is especially true given the strength of the evidence against Kazalyn. We hold that the admission of evidence regarding Kazalyn striking his wife on one occasion prior to their marriage is harmless error.

## C. *Evidence of Kazalyn's imprisonment.*

Kazalyn's statements to the police included evidence of prior incarceration. In the interviews, Kazalyn brought up his prior imprisonment in explaining why he did not come to the aid of his wife once she had exited the car. He stated that he left his wife on Industrial Road because he was concerned about violating his parole and being sent back to prison after he had just finished serving ten years. His concern about being sent back apparently stemmed from his alcohol use and his wife's use of cocaine. The district court specifically found that the probative value of establishing what happened on the night of Mrs. Kazalyn's death outweighed the prejudice to the defendant. We agree.

Kazalyn's statements are highly probative of what occurred on the night of his wife's death. His statements explain why he pulled his car off to the side of the road and waited, rather than returning to his wife's aid.

Kazalyn also apparently, finds error in the admission of his second statement which disclosed that the interview was held at Indian Springs Prison. This one mention of imprisonment was not overwhelmingly prejudicial to Kazalyn. We therefore hold that it was harmless error.

### III. *The jury instruction on reasonable doubt.*

The defendant argues that the instruction given to the jury on reasonable doubt is unconstitutional.

In Lord v. State, 107 Nev. 28, 806 P.2d 548 (1991), this court examined NRS 175.211(1),[3] and the exact same instruction as was given in this case, in comparison with Cage v. Louisiana, ...... U.S. ......, 111 S.Ct. 328 (1990). This court held that "the Cage holding is limited to the interpretation of a single Louisiana instruction that is not similar to the instruction on reasonable doubt given in Nevada . . . . [NRS 175.211] satis[fies] the due process requirements of both the United States and the Nevada Constitution." *Lord,* 107 Nev. 40, 806 P.2d at 556.

Kazalyn's argument on this issue is without merit.

### IV. *The jury instruction on premeditation.*

Kazalyn argues that the jury instruction on premeditation is misleading because it does not distinguish between premeditation and malice aforethought.

The instruction on premeditation given by the district court is as follows:

> Premeditation is a design, a determination to kill, distinctly formed in the mind at any moment before or at the time of the killing.
>
> Premeditation need not be for a day, an hour or even a minute. It may be as instantaneous as successive thoughts of the mind. If the jury believes from the evidence that the act constituting the killing has been preceded by and has been the result of premeditation, no matter how rapidly the premeditation is followed by the act constituting the killing, it is wilful, deliberate and premeditated murder.

The court further instructed the jury on malice aforethought; the definition included the following language:

---

[3]NRS 175.211, in its entirety, reads:

Reasonable doubt defined; no other definition to be given to juries.

1. A reasonable doubt is one based on reason. It is not mere possible doubt, but is such a doubt as would govern or control a person in the more weighty affairs of life. If the minds of the jurors, after the entire comparison and consideration of all the evidence, are in such a condition that they can say they feel an abiding conviction of the truth of the charge, there is not a reasonable doubt. Doubt to be reasonable must be actual and substantial, not mere possibility or speculation.

2. No other definition of reasonable doubt shall be given by the court to juries in criminal actions in this state.

> Malice aforethought does not imply deliberation or the lapse of any considerable time between the malicious intention to injure another and the actual execution of the intention but denotes rather an unlawful purpose and design in contradistinction to accident and mischance.

The premeditation instruction closely follows the definition this court has set forth:

> To make a killing deliberate as well as premeditated, it is unnecessary that the intention to kill shall have been entertained for any considerable length of time. It is enough if there is time for the mind to think upon or consider the act, and then determine to do it. If, therefore, the killing is not the instant effect of impulse—if there is hesitation or doubt to be overcome, a choice made as the result of thought, however short the struggle between the intention and the act—it is sufficient to characterize the crime as deliberate and premeditated murder. In other words, one may be guilty of murder in the first degree although the intent to commit such a homicide is formed ''at the very moment the shot is fired.''

*Payne v. State*, 81 Nev. 503, 508-09, 406 P.2d 922, 925-26 (1965) (citations omitted).

The jury instruction on premeditation meets the criteria set forth in *Payne*. We hold that the instruction on malice aforethought was sufficiently distinct from the instruction on premeditation, and thus, both instructions adequately informed the jury of the law.

### V. *Deadly weapon enhancement.*

Kazalyn asserts that his sentence was enhanced erroneously, because under the recently decided Zgombic v. State, 106 Nev. 571, 798 P.2d 548 (1990), an automobile is not a deadly weapon. We agree. An automobile which is used in the manner contemplated by its construction and design is not inherently dangerous and likely to cause a life threatening injury or death. As we said in *Zgombic,* the Legislature intended to curb the potential violence inherent in the weapon itself and to deter injuries caused by weapons. *Id.* at 576, 798 P.2d at 551. An automobile clearly is not within the Legislature's contemplation of a deadly weapon.

We therefore vacate the consecutive life sentence without the possibility of parole which was imposed on Kazalyn for use of a deadly weapon.

## VI. *The separate penalty hearing.*

Kazalyn moved the court to forego a separate penalty hearing on the grounds that a hearing is only appropriate in death penalty cases. The court denied the motion, stating that in a first degree murder case, the jury was entitled to know aggravating and mitigating circumstances along with the defendant's criminal history.

Kazalyn argues that it was error for the district court to hold a separate penalty hearing. The State argues that a district court is *permitted* to hold a separate penalty hearing in a first degree murder case, even where the death penalty is not a sentencing option, because the hearing is helpful to the jury.

A separate penalty hearing is mandated in death penalty cases by NRS 175.552, which provides in relevant part:

> Requirement; jury; panel of judges; evidence. Upon a finding that a defendant is guilty of murder of the first degree, the court shall conduct a separate penalty hearing to determine whether the defendant shall be sentenced to death or to life imprisonment with or without possibility of parole. The hearing shall be conducted in the trial court before the trial jury, or before a panel of three district judges if the trial was without a jury . . . .

This court has held that a separate penalty hearing is not required in non-death penalty cases. McCabe v. State, 98 Nev. 604, 655 P.2d 536 (1982). We now hold specifically that a separate penalty hearing is appropriate *only* where the death penalty is a sentencing option. The main purpose of the hearing is to determine whether a sentence of death or life imprisonment should be imposed. *Id.* at 607, 655 P.2d at 538. Absent consideration of the death sentence, a separate penalty hearing is simply not warranted.

While it was error in this case to hold a separate penalty hearing, we hold that it was not reversible error. Kazalyn has failed to show how he was prejudiced by the separate penalty hearing and jury sentencing.

## VII. *Eligibility of parole.*

The district court gave a jury instruction that a sentence of life imprisonment with the possibility of parole would result in Kazalyn being eligible for parole after ten years. Kazalyn requested that the jury be informed that he would be eligible for parole in

*twenty* years because of the sentencing enhancement mandated by NRS 193.165.[4] He now argues that the failure to accurately inform the jury of the correct parole date misled the jury and deprived him of a fair penalty hearing.

The State argues that the court's refusal to inform the jury of the date of possible parole is harmless error, because the jury sentenced him to life *without* the possibility of parole.

This court explained in Petrocelli v. State, 101 Nev. 46, 692 P.2d 503 (1985), that a jury instruction discussing parole in a murder case is proper as long as it does not mislead the jury, and further, that it is not error to inform the jury when the defendant will be eligible for parole. *Id.* at 57, 692 P.2d at 511.

If a trial court wishes to inform the jury of the possible date of parole, it must do so with accuracy. However, without the penalty enhancement for use of a deadly weapon, Kazalyn would have been eligible for parole in ten years if the jury had chosen to sentence him to life imprisonment with the possibility of parole. We have explained that the enhancement does not apply to this case. Therefore, the jury was not misled as to when Kazalyn would be eligible for parole.

## Conclusion

We find no reversible error in the guilt phase of the trial. However, we find that the penalty enhancement for use of a deadly weapon was in error. Accordingly, we affirm the conviction and vacate the consecutive life sentence imposed for the use of a deadly weapon.

---

[4]NRS 193.165 provides in relevant part:

Additional penalty when deadly weapon or tear gas used in commission of crime; restriction of probation.

1. Any person who uses a firearm or other deadly weapon or a weapon containing or capable of emitting tear gas, whether or not its possession is permitted by NRS 202.375, in the commission of a crime shall be punished by imprisonment in the state prison for a term equal to and in addition to the term of imprisonment prescribed by statute for such crime. The sentence prescribed by this section shall run consecutively with the sentence prescribed by statute for such crime.