*25
 
 OPINION
 

 By the Court,
 

 Maupin, J.:
 

 Appellant Leslie Eugene Graham was charged with first-degree murder in connection with the death of Chelsey Hachez, the eight-month-old daughter of his live-in companion, Kimberly Ann Hachez. The fatal injuries were sustained while Graham was at home alone with the child. Although he gave slightly different versions of the incident to family members, police, and paramedics, he primarily maintained that the baby was rendered unconscious when she fell from a bed and struck her head.
 

 Graham did not testify at trial. His version was presented to the jury through other witnesses. Kimberly Hachez testified that Graham had been with Chelsey hundreds of times, was good with her, and treated her like a daughter. Graham’s former spouse and a former companion both testified that he had never been anything other than caring and patient around small children.
 

 Uncontroverted medical evidence established that the cause of death was hemorrhage and brain swelling associated with three separate skull fractures caused by “blunt force trauma.” Experts testified that the injuries were not consistent with a mere fall from a bed onto the floor.
 

 The jury found Graham guilty of murder in the first degree. Graham received a sentence of life in the Nevada State Prison without the possibility of parole. He appeals.
 

 DISCUSSION
 

 Graham was convicted based upon a criminal information charging him with open murder solely on the theory that he subjected Chelsey to “acts of child abuse” resulting in her death. Graham claims entitlement to a new trial because the district court refused instructions and verdict forms on the issue of second-degree murder. We conclude Graham’s contention lacks merit.
 

 NRS 200.010 defines murder as the “unlawful killing of a human being, with malice aforethought, either express or implied.” Express malice is defined in terms of “deliberate intention unlawfully to take away . . . life”; malice is implied “when no considerable provocation appears, or when all the circumstances of the killing show an abandoned and malignant heart.” NRS 200.020. The jury was instructed on these principles. It was also instructed that malice, “as applied to murder,” does not necessarily import ill-will toward the victim, but signifies general malignant recklessness of others’ lives and safety or disregard of social duty.
 
 See
 
 Thedford v. Sheriff, 86 Nev. 741, 744, 476 P.2d
 
 *26
 
 25, 27 (1970) (citing State v. Judge, 38 S.E.2d 715 (S.C. 1946); Chisley v. State, 95 A.2d 577 (Md. 1953)).
 

 Once the factfinder concludes that a murder has been committed, that is an unlawful killing with malice aforethought, the offense must then be classified by degree. The Nevada legislature has created two general categories of murder, murders of the first and second degree. First-degree murder is murder which is: (a) perpetrated by means of “poison, lying in wait, torture or
 
 child abuse, or by any other kind of willful, deliberate and premeditated killing’
 
 ’; (b) committed in the perpetration or attempted perpetration of certain specified life-endangering felonies, i.e., felony murder; or (c) committed to avoid or prevent lawful arrest by a peace officer or effect the escape of any person from legal custody. NRS 200.030(1) (emphasis added).
 
 [1]
 
 The second category, murder of the second degree, “is all other kinds of murder.” NRS 200.030(2).
 

 Graham contends that second-degree murder is a lesser-included offense of all murders of the first degree, including murder perpetrated by means of child abuse.
 
 See
 
 Miner v. Lamb, 86 Nev. 54, 58, 464 P.2d 451, 453 (1970) (“An open murder complaint charges murder in the first degree and all necessarily included offenses”). Thus, Graham argues that the district court erred in its refusal to give the following instructions:
 

 A. Murder of the second degree is also the unlawful killing of a human being with malice aforethought when there is manifested an intention unlawfully to kill a human being but the evidence is insufficient to establish deliberation and premeditation.
 

 B. The unlawful killing of a human being with malice aforethought, but without a deliberately formed and premeditated intent to kill, is murder of the second degree when the killing results from an unlawful act, the natural consequences of which are dangerous to life, which act is intentionally performed by a person who knows that his conduct endangers the life of another, even though the person has not specifically formed an intention to kill.
 
 [2]
 

 The district court refused these instructions on the ground that murders by child abuse are defined by statute as first-degree mur
 
 *27
 
 der and cannot be reduced in grade to murder of the second degree. Accordingly, the district court instructed the jury that “[m]urder by child abuse is Murder in the First Degree,” and that “[cjhild abuse means physical injury of a nonaccidental nature to a child under the age of 18 years.” No instructions on deliberation and premeditation were given.
 
 [3]
 

 Graham argues that Williams v. State, 110 Nev. 1182, 885 P.2d 536 (1994), renders child-abuse murder cases subject to a second-degree murder analysis. In
 
 Williams,
 
 we concluded that the term “nonaccidental” as used in NRS 200.030 was not unconstitutionally vague because
 

 [a]ny person of ordinary intelligence who contemplates causing the
 
 purposeful,
 
 or nonaccidental, injury of a child should be readily aware, . . . that such conduct constitutes child abuse, and, if the abuse results in the death of the child, could subject the perpetrator to a conviction of first-degree murder.
 

 Id.
 
 at 1188, 885 P.2d at 540 (emphasis added). Graham contends that the phrase “purposeful, or nonaccidental, injury” demonstrates our intent to draw a distinction, for purposes of gradating degrees of murder, between purposeful acts committed
 
 without
 
 intent to injure or kill and purposeful acts committed
 
 with
 
 the intent to injure or kill. Absent intent to injure, Graham reasons, the offense may be second-degree murder under two theories: one, there is a lack of deliberation and premeditation, or two, there is no intent to kill so the act falls within the felony-murder rule of
 
 Morris,
 
 99 Nev. 109, 659 P.2d 852. Because this court did not intend to imply such a proposition in
 
 Williams,
 
 we take this opportunity to reject it.
 

 The murders specifically enumerated in NRS 200.030(1)— those perpetrated by means of poison, lying in wait, torture, and child abuse; those committed in the perpetration or attempted perpetration of certain life-endangering felonies; and those committed to avoid arrest or to effect an escape from custody—constitute murder of the first degree. Once it is proved that a homicide was done with malice and thus constitutes murder,
 
 [4]
 
 the murder is in
 
 *28
 
 the first degree as a matter of law if it was done in an enumerated manner as shown by the particular facts of an individual case.
 

 There is no need to deem an enumerated murder deliberate and premeditated, as this court and others have sometimes assumed. For example, in State v. Randolph, 49 Nev. 241, 246-47, 242 P. 697, 698 (1926), this court approved of a jury instruction which stated that where a killing is perpetrated by an enumerated means, such as poison, or done in the perpetration or attempt to perpetrate an enumerated felony,
 

 ‘ ‘the test question, ‘Is the killing willful, deliberate, and premeditated?’ is answered by the statute itself, and the jury have no option but to find the prisoner guilty in the first degree. Hence, so far as these two cases are concerned, all difficulty as to the question of degree is removed by the statute.”
 

 The actual question answered by the statute is simply, “Is the murder in the first degree?” The question of willfulness, deliberation, and premeditation does not arise, either legally or factually, when a murder is done in an enumerated manner.
 
 See, e.g.,
 
 State v. Johnson, 344 S.E.2d 775, 781 (N.C. 1986) (when a murder is perpetrated by an enumerated means, the presence or absence of premeditation and deliberation is irrelevant); People v. Thomas, 261 P.2d 1, 3 (Cal. 1953) (by statutory definition, a murder by poison, lying in wait, or torture is of the first degree; whether such a murder is willful, deliberate, and premeditated is not a legal or factual question);
 
 cf.
 
 State v. Munios, 44 Nev. 353, 358, 195 P. 806, 808 (1921) (use of poison, lying in wait, etc., to commit murder “are merely circumstances of aggravation, which, in the law, amount to, or are the equivalent of, premeditation”).
 

 Thus, the murders enumerated in NRS 200.030(1) are legislatively deemed to be murder of the first degree. The only subcategory of first-degree murder not so specifically defined is that accomplished by “willful, deliberate and premeditated killing,” referred to in the second phrase of NRS 200.030(l)(a). To sustain a conviction under this subcategory of first-degree murder, proof of willfulness, deliberation, and premeditation, whether direct or circumstantial, must be established. Failure to establish such proof renders the offense murder in the second degree.
 

 By contrast, when an enumerated first-degree murder is charged, such as murder by child abuse, the presence or absence of deliberation and premeditation is of no consequence. Such murders do not fall within the category of murder that can be
 

 
 *29
 
 reduced in degree by failure to prove deliberation and premeditation. Nor can such a murder be reduced in degree because it is committed without intent to kill and would otherwise fall within the ambit of
 
 Morris:
 
 if done with malice and in an enumerated manner, the killing constitutes first-degree murder by legislative fiat.
 

 We therefore hold that it is unnecessary to instruct juries on deliberation, premeditation, and second-degree murder when proofs in the case can only support a theory of guilt described within one of the specifically enumerated categories set forth in NRS 200.030(1).
 

 Here, the only evidence supporting Graham’s defense was his statements, through others, that the death of Chelsey was accidental. One of his second-degree murder theories offered on appeal is based upon a failure of proof of Graham’s intent to injure the child. If either express or implied malice had not been proved, Graham should have been found innocent of the charges against him. However, the nature of the injuries administered to Chelsey circumstantially established the malice requirement. The injuries and the apparently false explanation to the other witnesses satisfied the necessary proof of child abuse. Graham’s argument for a second-degree murder instruction, based upon a lack of intent, is inconsistent with any of the evidence in this case because the only cause of death proved below was the administration of the three separate skull fractures, which could not have resulted from an accidental fall from the bed.
 
 See
 
 Rice v. State, 113 Nev. 1300, 1310, 949 P.2d 262, 268-69 (1997); Lisby v. State, 82 Nev. 183, 187-88, 414 P.2d 592, 595 (1966). Because the sole agency of death proved in this case was “child abuse,” this offense is, by definition, first-degree murder. Because the jury found at the very least implied malice, i.e., that Graham acted with an abandoned and malignant heart in reckless disregard of Chelsey’s life and safety, lack of specific intent or of deliberation and premeditation to kill cannot, as a matter of law, reduce the degree of the charge.
 

 As an extension of his argument under
 
 Williams,
 
 Graham argues that, in the event the State failed in its proof of child abuse, the jury could conclude that an act of “neglect” or “endangerment” had been committed. This, Graham further reasons, would entitle the jury to return a verdict of involuntary manslaughter or second-degree murder under
 
 Morris.
 
 Under this reasoning, manslaughter would be the appropriate verdict if, under the
 
 *30
 
 instruction given, the neglect or endangerment predicate involved proof of an unlawful act, or a “lawful act which probably might produce” death in an unlawful manner.
 
 See
 
 NRS 200.070.
 
 [5]
 
 In this regard, the jury was given the following instruction on involuntary manslaughter:
 

 Involuntary Manslaughter is the killing of a human being, without any intent to do so, in‘the commission of an unlawful act or a lawful act which probably might produce such a consequence in an unlawful manner; but where the involuntary killing occurs in the commission of an unlawful act, which, in its consequence, naturally tends to destroy the life of a human being, or is committed in the prosecution of a felonious intent, the offense is Murder.
 
 [6]
 

 “Murder” under this instruction ordinarily refers to second-degree felony murder.
 
 See Morris, 99
 
 Nev. 109, 659 P.2d 852. Thus, a
 
 “Morris”
 
 instruction such as that rejected below is usually given in conjunction with the involuntary manslaughter instruction, which was read to the jury in this case. Graham therefore argues that, under
 
 Morris
 
 and under the manslaughter instruction, a second-degree murder verdict would have been appropriate if the predicate proof of neglect or endangerment involved actions toward the child that would inherently or ‘ ‘naturally tend” to destroy life, but which were not committed with the intent to do so. Because the involuntary manslaughter instruction defined how an act that might qualify as manslaughter was ‘ ‘murder,” Graham also contends that the jury was restricted to a finding of murder in the first degree because no second-degree murder instruction was given. That is, without a second-degree murder instruction dovetailing the involuntary manslaughter instruction, the only form of verdict and instruction on murder given to the jury was murder in the first degree.
 

 
 *31
 
 We conclude that, had Graham’s proofs been consistent with this theory, it would have been error not to give the second-degree murder instruction along with the involuntary manslaughter instruction.
 
 Cf.
 
 Noonan v. State, 115 Nev. 184, 189, 980 P.2d 637, 639-40 (1999). However, we also conclude that the proofs before this jury were only consistent with a finding of either guilty of child-abuse murder or not guilty. Leaving a child alone on an ordinary bed under the circumstances described by Graham is not an “unlawful” act of either neglect or endangerment, nor is it a lawful act that “probably might” cause death in an unlawful manner, nor is it an act that would “naturally tend” to destroy life. Thus, the use of the involuntary manslaughter instruction without a conforming second-degree murder instruction was harmless error. In fact, under our ruling herein, the involuntary manslaughter instruction should not have been given.
 

 Graham also contends that by requiring some proof of second-degree murder before allowing instruction on that offense, a defendant is forced to put on self-incriminating evidence in violation of the Fifth Amendment to the United States Constitution.
 
 [7]
 
 We disagree. An absence of proof of an element of a lesser-included offense never compels a defendant to put on any evidence. Under Graham’s theory, he is simply entitled to the instruction despite an absence of proof supporting it. Without evidence supporting a second-degree murder conviction, our adoption of Graham’s notion of this area of law would legitimize simple lenity as a separate doctrinal basis for a jury instruction. In this, he seeks our embrace of a form of jury nullification. We decline Graham’s invitation to embark into these troubling jurisprudential waters.
 
 [8]
 

 The district court correctly refused Graham’s second-degree murder instructions and the corresponding forms of verdict. Accordingly, the judgment of conviction below is affirmed.
 

 Rose, C. L, Young, Shearing, Agosti, Leavitt and Becker, JL, concur.
 

 [1]
 

 The 1999 legislature amended NRS 200.030, transferring murders perpetrated by child abuse into the felony-murder subcategory of first-degree murder. 1999 Nev. Stat., ch. 319, § 3, at 1335.
 

 [2]
 

 The second quoted proposed instruction is based upon Sheriff v. Morris, 99 Nev. 109, 659 P.2d 852 (1983). In
 
 Morris
 
 we recognized a “second-degree felony murder” rule involving homicides committed without specific intent to kill in the course of a limited number of life-endangering felonies not included within NRS 200.030(1)(b).
 
 Id.
 
 at 113-18, 659 P.2d at 856-59.
 

 [3]
 

 Although Graham contends he was entitled to a second-degree murder instruction based upon lack of deliberation and premeditation, he offered no instruction requiring the jury to find deliberation and premeditation in order to convict him of first-degree murder. Under our ruling today, there would have been no legal justification for doing so.
 

 [4]
 

 Felony murder is the only category of homicide where by law the malice required for murder is supplied by the intent to commit an underlying felony.
 
 See
 
 Ford v. State, 99 Nev. 209, 215, 660 P.2d 992, 995 (1983).
 

 [5]
 

 NRS 200.070 states:
 

 Except under the circumstances provided in NRS 484.348 and 484.377, involuntary manslaughter is the killing of a human being, without any intent to do so, in the commission of an unlawful act, or a lawful act which probably might produce such a consequence in an unlawful manner, but where the involuntary killing occurs in the commission of an unlawful act, which, in its consequences, naturally tends to destroy the life of a human being, or is committed in the prosecution of a felonious intent, the offense is murder.
 

 [6]
 

 Although the instruction attempted to quote directly from NRS 200.070, the punctuation between the words “unlawful act” and “or a lawful act” was omitted. This changed the meaning of the statute. However, as noted below, the use of this instruction as read to the jury was harmless error. A correct quotation of the statute in the instruction without a corresponding second-degree murder instruction would not have changed the outcome of this appeal.
 

 [7]
 

 The Fifth Amendment provides that no person “shall be compelled in any criminal case to be a witness against himself.” U.S. Const. amend. V.
 

 [8]
 

 Our ruling today renounces “lenity” as a separate basis for giving instructions on murder of the second degree. Of course, in any case where there is evidence supporting either first- or second-degree murder, a jury is entitled to extend lenity and convict of the lesser offense. While juries may not be instructed on this issue, convictions rendered on this basis, in accord with our prior decisions, may be upheld.
 
 See
 
 State v. Lindsey, 19 Nev. 47, 5 P. 822 (1885).