Maupin, J.,
concurring:
The jury in this case was instructed in the following manner:
Premeditation is a design, a determination to kill, distinctly formed in the mind at any moment before or at the time of the killing.
Premeditation need not be for a day, an hour or even a minute. It may be as instantaneous as successive thoughts of the mind. For if the jury believes from the evidence that the act constituting the killing has been preceded by and has been the result of premeditation, no matter how rapidly the premeditation is followed by the act constituting the killing, it is willful, deliberate and premeditated murder.
As noted by the majority, this instruction mirrors our observations in Kazalyn v. State, 108 Nev. 67, 75, 825 P.2d 578, 583 (1992). I write separately to offer an alternative approach to the concern that the line between first- and second-degree murder has arguably been blurred by Kazalyn and other opinions of this court discussing premeditation as a separate element of first-degree murder.

DISCUSSION

NRS 200.010 defines murder in relevant part as the “unlawful killing of a human being, with malice aforethought, either express or implied . . . .” Once it has been established that a murder has been committed, that is an unlawful killing with malice aforethought, the offense must then be classified by degree. See Graham v. State, 116 Nev. 23, 992 P.2d 255 (2000).
Under NRS 200.030(l)(a), (b) and (c), the specifically enumerated homicides definitionally constitute murder in the first degree.[1] Id. The only subcategory of first-degree murder where first-degree murder is not self-defined is the broad general category of murders not specifically enumerated, i.e., the “other *244 kind[s] of willful, deliberate and premeditated killing,” referred to in the second phrase of NRS 200.030(l)(a). It is therefore the second phrase of NRS 200.030(l)(a) that provides the first line of departure in the analysis of whether a particular fact pattern falls within the first-degree murder construct or within the second-degree murder construct. See State v. Randolph, 49 Nev. 241, 246-47, 242 P. 697, 698 (1926); Graham, 116 Nev. at 28, 992 P.2d at 258 (2000).
The Kazalyn instruction invites concern when it defines premeditation as a “determination to kill”[2] because express malice means a deliberate intention to kill (see NRS 200.020(1); Keys v. State, 104 Nev. 736, 740, 766 P.2d 270, 272 (1988)), and, by definition, an “intention” is “a determination to act in a certain way.” See Webster’s Ninth New Collegiate Dictionary 629 (1985). Indeed, there is very little distinction between premeditation and malice aforethought, and therefore first- and second-degree murder, when we define premeditation in terms of a “determination to kill” and malice aforethought as an “intention to kill.”[3]
My second concern arises from our decisional law discussing the three elements set forth in the second phrase of NRS 200.030(l)(a). In Hern v. State, 97 Nev. 529, 635 P.2d 278 (1981), we concluded that “all three elements, willfulness, deliberation, and premeditation, must be proven beyond a reasonable doubt before an accused can be convicted of first degree murder.’ ’ Id. at 532, 635 P2d at 280 (emphasis added). One could fairly deduce from this declaration that deliberation and premeditation *245 are not synonymous and each must be proven separately.[4] In Powell v. State, 108 Nev. 700, 838 P.2d 921 (1992), however, we noted:
In [DePasquale v. State, 106 Nev. 843, 803 P.2d 218 (1990), cert. denied, 502 U.S. 829 (1991)], as in [Briano v. State, 94 Nev. 422, 581 P.2d 5 (1978)], we used the terms premeditated and deliberate as a single term.
Other jurisdictions have held that the terms deliberate, premeditate and willful are a single phrase, meaning simply that the actor intended to commit the act and intended death to result. . . .
We have set forth the requirement for premeditation in [Briano], where we stated “[T]he state must prove that a design to kill was distinctly and rationally formed in the mind of the perpetrator, at or before the time the fatal blows were struck. . . . [I]t [does not] matter how short a time existed between the formation of the design to kill and the killing itself.” As long as the instruction on premeditation which is given to the jury comports with Briano, it is not necessary to separately define deliberateness or willfulness.
Id. at 709-10, 838 P.2d at 927 (quoting Briano, 94 Nev. at 425, 581 P.2d at 7) (citations omitted); see also Williams v. State, 113 Nev. 1008, 1017, 945 P.2d 438, 443 (1997) (affirming Powell); Doyle v. State, 112 Nev. 879, 900, 921 P.2d 901, 915 (1996) (affirming Powell); Witter v. State, 112 Nev. 908, 918, 921 P.2d 886, 893 (1996) (in affirming Powell, expressly concluding that a jury instruction identical to the one given in Byford’s case gave the jury an accurate definition of premeditation and deliberation, and, therefore, that it was unnecessary to provide an additional instruction defining “deliberation”). Thus, whether deliberation and premeditation must be proven separately, or whether they refer to the same reflective process whereby proof of one necessarily proves the presence of the other, has become uncertain.
Accordingly, a majority of this court has concluded that some clarification of our murder jurisprudence is needed. First, because express malice means a deliberate intention to kill (see 200.020(1); Keys, 104 Nev. at 740, 766 P.2d at 272), and because a willful killing means one that is intentional (see Webster’s Ninth New Collegiate Dictionary 1350 (1985) (defining “willful” as “done deliberately: Intentional”)), the statutory requirement of NRS 200.030(l)(a) that “other” first-degree murders must be perpetrated willfully is merely a reiteration of the fact that express *246 malice is always an element of this subcategory of first-degree murder. Thus, if the State can only prove that the killing was done willfully and unlawfully, but cannot separately prove premeditation, the defendant is guilty of second-degree murder.
Secondly, given the synonymous nature of express malice and “willfulness” as used in our murder jurisprudence, it is the presence of premeditation and deliberation that distinguishes first-degree murder from second-degree murder. We have previously concluded that “[tjhere is nothing to indicate that [“premeditated” and “deliberate”] are used in law other than in their ordinary sense. Ogden v. State, 96 Nev. 258, 263, 607 P.2d 576, 579 (1980) (citing People v. Anderson, 447 P.2d 942, 948 (Cal. 1968) (recognizing that the California Legislature did not intend to give “deliberate” and “premeditated” meaning other than their ordinary dictionary meanings)). Therefore, because the word “premeditate” is defined as “to think, consider, or deliberate beforehand” (see Webster’s Ninth New Collegiate Dictionary 928 (1985) (emphasis added)), I have concluded that there is no meaningful or appreciable difference between “premeditation” and “deliberation.” In doing so, I would not completely disavow this court’s previous conclusion in Hem that all three elements—willfulness, deliberation, and premeditation must be present in order to prove first-degree murder. Rather, I would simply reject any implication that premeditation and deliberation must be proven as separate and distinct concepts, and conclude that proof of premeditation will also suffice as proof of deliberation,[5] and vice versa.
Thirdly, premeditation is not merely an intention or ‘ ‘determination” to kill. The terms “willful, deliberate, and premeditated” do not connote the same general idea of an intention to kill.[6] Our acceptance of as much obscures the distinction between murders of the first and second degree because it renders premeditation synonymous with one form of malice aforethought. All three terms (willfulness, deliberation and premeditation) involve intention but, as noted above, only “willfulness” exclusively connotes an intention to kill. As terms of art, separate and apart from willfulness, “premeditation” and “deliberation” additionally refer to *247 actual reflection that occurs for any length of time prior to that instant when an individual is in possession of a determination or intention to kill.[7] That this period of reflection may be “as instantaneous as successive thoughts of the mind” is of no consequence, as such language merely instructs that the amount of time one spends premeditating and deliberating is irrelevant. Indeed, the true test is not the duration of time as much as it is the extent and quality of the reflection.[8]
Thus, what matters is that there is a period of time during which the mind actually thinks upon or considers the act (i.e., premeditates and deliberates). The end result is the formation of an intention or determination to kill and an act resulting in the death of another. If this sequence occurs, the crime is first-degree murder.[9] If the defendant has not had time to think upon or consider the act (i.e., has not premeditated and deliberated), but has intentionally killed another as the “instant effect of impulse,” the crime is arguably second-degree murder.[10]
*248 To effectuate these points of clarification, I would depart from the majority and suggest the following jury instructions for use by the district courts in cases where defendants are charged with first-degree murder pursuant to the second phrase of NRS 200.030(l)(a):
Murder is the unlawful killing of another with either express or implied malice aforethought.
Malice aforethought for these purposes is the intent to kill. An individual acts with express malice when he or she unlawfully intends to kill another. Malice may be[11] implied to that individual when he or she unlawfully kills without considerable provocation or when the circumstances of the killing show an abandoned and malignant heart.
Murder of the first degree is the willful, deliberate, and premeditated killing of another in an unlawful manner. All three elements—willfulness, deliberation, and premeditation-must be proven beyond a reasonable doubt before an accused can be convicted of first-degree murder. In this con *249 text, the term “willful” has the same meaning as express malice. Therefore, proof that the killing was done with malice aforethought is also proof that the killing was done willfully.
In determining whether the elements of willfulness, deliberation and premeditation have been satisfied beyond a reasonable doubt, you must apply the ordinary meaning a reasonable person would apply to these terms.
Premeditation and deliberation refer to the same thought process. They each refer to a period of actual reflection that occurs prior to the formation of an intention to kill. Proof of premeditation is also proof of deliberation, and vice versa.
Premeditation is therefore a design, a determination to kill, distinctly formed in the mind at any moment before or at the time of the killing. Premeditation and deliberation need not be for a day, an hour or even a minute. They may be a period of time that is as instantaneous as successive thoughts of the mind. For, if the jury believes from the evidence that the act constituting the killing has been preceded by a period of premeditation and deliberation that results in the formation of an intention to kill, no matter how rapidly this period and formation of an intention to kill is followed by the act constituting the killing, it is willful, deliberate and premeditated murder.
The majority notes that “[d]eliberation remains a critical element of the mens rea necessary for first-degree murder, connoting a dispassionate weighing process and consideration of consequences before acting,” and that “[i]n order to establish first-degree murder, the premeditated killing must also have been done deliberately, that is, with coolness and reflection.” The majority relies on State v. Brown, 836 S.W.2d 530, 539 (Tenn. 1992) with approval in support of this proposition. In my view, defining deliberation and premeditation in terms of an elaborate weighing process or “cold calculation” may very well define many types of premeditated murder out of existence and tacitly overrule our prior rulings on this issue in Williams and Witter. Further, although the instruction proposed by the majority does not actually require “coolness” or “cold calculation” as a condition of proof of deliberation or premeditation, the majority’s language quoted above supported by the Tennessee decision in Brown will arguably require that district courts, upon request, give special jury instructions defining this category of first-degree murder in these terms.
As noted by the majority, the evidence in this case is clearly sufficient to establish willfulness, deliberation, and premeditation on Byford’s part. Thus, Byford’s conviction should be sustained *250 under the majority analysis and the analysis in this separate concurrence.
As noted above,[12] the use of the Kazalyn instruction does not mandate reversal.

Murders committed by means of poison, lying in wait, torture or child abuse; murders committed in the commission of certain enumerated life-endangering felonies (the felony-murder rule); and murders committed to avoid lawful arrest or to escape from legal custody. NRS 200.030 (l)(a), (b) and (c). (The 1999 legislature amended NRS 200.030, transferring murders perpetrated by child abuse into the felony-murder subcategory of first-degree murder. 1999 Nev. Stat., ch. 319, § 3, at 1335.) Felony-murder is the only category of murder where malice is statutorily presumed.

The specific language of the Kazalyn instruction is that premeditation is “a design, a determination to kill.” Kazalyn, 108 Nev. at 75, 825 P.2d at 583. The language arguably implies that a design and a determination are one and the same. Thus, the discourse in which we are engaged has become necessary. This having been said, use of the Kazalyn instruction does not warrant reversal of any prior convictions rendered in this State. This is because the use of the term “design,” regardless of the potential ambiguity, is sufficient to convey a distinction between malice and either deliberation or premeditation, especially where, as here, there is substantial evidence to support findings of deliberation and premeditation as either the majority or this concurrence have defined these terms.

This court has previously concluded that the terms “deliberate, premeditated, and willful,” as used in defining first-degree murder, connote the same general idea—“the intention to kill” (see Powell v. State, 108 Nev. 700, 709, 838 P.2d 921, 922 (1992), vacated on other grounds, 511 U.S. 79 (1994)), notwithstanding the fact that we have previously declared that “[m]alice is not synonymous with either deliberation or premeditation.” Hern v. State, 97 Nev. 529, 532, 635 P.2d 278, 280 (1981); see also Greene v. State, 113 Nev. 157, 168, 931 P.2d 54, 61 (1997) (“[T]he terms premeditated, deliberate and willful are a single phrase, meaning simply that the actor intended to commit the act and intended death as the result of the act.”).

Compare State v. Brown, 836 S.W.2d 530, 539 (Tenn. 1992) (“In order to establish first-degree murder, the premeditated killing ihust also have been done deliberately, that is, with coolness and reflection.”).

The second phrase of NRS 200.030(l)(a) uses the words “willful, deliberate and premeditated.” Our cases have treated the word “deliberate” as meaning “deliberation.” As noted, I believe that deliberation as an element is subsumed within the process of premeditation. However, if the word deliberate does not mean “deliberated” or “deliberation,” but means “to do on purpose,” the term is simply a synonym for willfulness. Thus, the term “deliberate” does not as a practical matter affect the distinction between murders of the first and second degree.

I would clarify Powell and its progeny to the extent that they conclude the contrary.

As we stated in Payne v. State, 81 Nev. 503, 508-09, 406 P.2d 922, 925-26 (1965):
To make a killing deliberate])!] as well as premeditated, it is unnecessary that the intention to kill shall have been entertained for any considerable length of time. It is enough if there is time for the mind to think upon or consider the act, and then determine to do it. If, therefore, the killing is not the instant effect of impulse—if there is hesitation or doubt to be overcome, a choice made as the result of thought, however short the struggle between the intention and the act—it is sufficient to characterize the crime as deliberate and premeditated murder.
(Citation omitted.)

The court in State v. Ramirez, 945 P.2d 376, 380 (Ariz. 1997) stated:
We conclude that the first degree murder statute has never been aimed at those who had time to reflect but did not; it has always been aimed at those who actually reflected—and then murdered.
If the difference between first and second degree murder is to be maintained, premeditation has to be understood as reflection. It is fair to talk of die period of time in which reflection might occur; but it is not fair to define reflection as the period of time in which it might occur. To have meaning, the element of premeditation must describe something that defendant actually does. Just as murder requires actual killing, premeditation requires actual reflection.

See Briano v. State, 94 Nev. 422, 425, 581 P.2d 5, 7 (1978) (evidence of premeditation and deliberation is seldom direct, and circumstantial evidence may be taken into account to provide sufficient evidence).

This does not override the fact that our statutes define voluntary manslaughter as an unlawful killing that occurs “upon a sudden heat of passion, caused by a provocation apparently sufficient to make the passion irresistible” (i.e., “a serious and highly provoking injury”). NRS 200.040(2); NRS 200.050. Indeed, as we noted in State v. Salgado, 38 Nev. 413, 416-17, 150 P. 764, 765 (1915) (quoting Francis Wharton, Law of Homicide § 163 (3d ed. 1907)):
[authority exists in support of the proposition that implied malice and *248 sudden passion may coexist, in which case the offense is not reduced to the grade of manslaughter. . . .
“If malice existed, the crime is murder, and not manslaughter, though sudden passion coexisted and the homicide was the product of both. ... If the provocation is inconsiderable, the law implies malice, and the homicide is murder; if it is great, malice will not be inferred, and it will be deemed to be manslaughter.”
See also State v. Fisko, 58 Nev. 65, 75, 70 P.2d 1113, 1116 (1937) (“Neither slight provocation nor an assault of a trivial nature will reduce a homicide from murder to manslaughter.”).

NRS 200.020(2) provides that “[m]alice shall be implied when no considerable provocation appears, or when all the circumstances of the killing show an abandoned and malignant heart.” (Emphasis added.) In Witter v. State, 112 Nev. 908, 917, 921 P.2d 886, 895 (1996), cert. denied, 520 U.S. 1217 (1997), this court approved an instruction stating that malice “may” be implied “when no considerable provocation appears, or when all the circumstances of the killing show an abandoned and malignant heart.” Unfortunately, the court wrongly stated that the exact language of the instruction used at trial in Witter had been approved in Guy v. State, 108 Nev. 770, 839 P.2d 578 (1992). This court also wrongly cited NRS 200.020(2) in support of its conclusion in this regard. In point of fact, the implied malice instruction in Guy followed NRS 200.020(2), utilizing the statutory term “shall” instead of “may.” Technically, a defendant in a murder prosecution is not entitled to the instruction approved in Witter. Thus, to the extent Witter implies that “may” must be substituted for the statutory term “shall,” it was decided in error. However, I would argue that it is not error to give the instruction approved in Witter because the use of “may” instead of “shall” does not affect any due process rights. Further, the instruction approved in Witter is preferable to the statutory instruction because it clearly eliminates the need to look to other instructions to determine if the State’s burden of proof has been properly articulated. See Doyle v. State, 112 Nev. 879, 900-02, 921 P.2d 901, 915 (1996).

See note 2.